OPINION
By BARNES, J.
The above entitled cause is now being determined de novo by reason of plaintiffs’ appeal on questions of law and fact from the judgment of the Court of Corn-man Pleas of Franklin County, Ohio.
A few years prior to 1918, P. W. Cook of Columbus, Franklin County, Ohio, died intestate owning at the time an, undertaking-business which he had operated for several years
Following the death of P. W. Cook the widow, Emma L. Cook, and four children inherited the business and continued to operate-it as a partnership.
The children consisted of two sons, Harold V". Cook and W. E. Cook, and two daughters, Helen A. Ayres and Mildred A. Spears.
Harold V. Cook was the older of the two sons and was said to be-the managing, active head, although the widow, Mrs. Cook, took an active part in the business affairs. The undertaking business was located at 1631 Parsons Avenue in a property owned by Mrs. Cook.
On November 5, 1918, Harold V. Cook died intestate, without issue, leaving his widow, Jessie Cook, his-only heir at law. On January 25, 1919, Jessie Cook, for a consideration of $2000.00 transferred all her interest in the business to the remaining four partners. It was apparently understood between the partners that Emma L. Cook at all times held an undivided one-third' interest and the children the remaining two-thirds divided between them equally. Following the death of Harold V. Cook, the brother W. E. Cook became the acting head so far as conducting the-funerals was concerned. Following the death of Harold V. Cook, J. G. Spears, husband of Mildred A. Spears, and William E. Ayres, husband of Helen Ayres, resigned' their separate avocations and came-to the funeral home as representatives of their respective wives, with-the intent and purpose of actively engaging in the business.
*226 This arrangement was of very short duration, and both Ayres and Spears separated themselves from active participation in the partnership business and went back to their former employment and vocations. Sometime in the spring of 1919 negotiations were opened up for the purchase of the interests of the two sisters by Mother Cook and the son, W. E. Cook. According to the testimony, William E. Cook was very anxious to purchase the interests of his two sisters, making an offer of $2500.00 for each share. The two daughters, while willing to sell, felt that the price was inadequate. Mother Cook was likewise very anxious that the daughters assign their interest to the son, W. E. Cook, and herself. The claim is made that as a final inducement ■to bring about the transfer Mother ■Cook made an oral agreement with .her two daughters as an inducement to assign the daughters’ interests on a basis of $2500.00, that .she would leave to the two daughters by will whatever real estate .she might own at the time of her ■death. The daughters claim that the transfer was made on the faith of this oral promise and would not have been made otherwise. The transfers were consummated by Mrs. Ayres on April 26, 1919, and by Mrs. Spears at a later date in the same year. Both transfers were in •writing and are as follows:
“Columbus, Ohio, April 26, 1919. This is to certify that Helen A. Ayres and her heirs agree to sell her right as inherited from her father P. W. Cook in the firm, known as Cook & Sons Funeral Directors, to Emma L. Cook and William E. ^Cook for the sum of $1.00 and other considerations.”
(Signed) Helen A. Ayres
William E. Cook,
'Emma L. Cook First Part.
William E. Cook,
Second Part.”
“This is to certify that I, Mildred Spears of the city of Columbus, Franklin County, Ohio, have this day sold and transferred all my right, title and interest into and concerning the undertaking, business conducted under the style and firm name of Cook & Sons and located at 1631 Parsons Avenue in the city of Columbus,' Ohio, to Emma L. Cook and W. E. Cook of said city, for the sum of $2500.00 paid cash in hand.
“It is further agreed that the said Emma L. Cook and W. E. Cook are to assume the payment of all debts and obligations against said business from and after this date and ail debts and obligations existing against said business during the time of my interest therein as a partner.
(Signed) Mildred A. Spears
W. E. Cook
Emma L. Cook.”
It definitely appears that W. E. Cook was not present when Mother Cook made the oral contract with her two daughters, as an inducement to make the transfer of the partnership interest to herself and son W. E. Cook. In fact, it is almost conclusively inferable that Mother Cook desired that he not be present or know anything about this secret arrangement. So far as is disclosed from the record there is no evidence that he ever was informed by Mother Cook or any one else that such a secret arrangement had been made.
It is apparent that W. E. Cook and the two sons-in-law were not as friendly in their business relations as should be desired, and this may be the reason why Mother Cook was extremely anxious that the daughters release their interest in the partnership business. Mother Cook died in June, *227 1938, intestate, leaving the three children surviving.
No last will and testament being found whereby the real estate was devised to the two daughters, action was commenced in September following seeking specific performance.
Helen Ayres, Administratrix, files an answer in which she avers that there is sufficient personal property in the estate of Mother Cook to pay all indebtedness, and further makes no claim to the real estate as such administratrix. She joins in the prayer of the petition. The defendant William E. Cook files an answer presenting two defenses. The first defense admits certain formal allegations of the petition and denies all others. The second defense avers that if Emma L. Cook promised to devise real estate to the plaintiffs as averred in the petition, that such promise was not in writing. In effect, this second defense pleads the statute of frauds.
In the presentation of the case in our Court it was stipulated that the transcript of evidence taken before the Common Pleas Court, supplemented by such additional evidence as either side might de-, sire to present, should be accepted as evidence in our Court.
Two additional witnesses are presented in the hearing before us. One witness appeared personally and testified and the other, in the (form of deposition.
The cause presents many interesting legal questions.
First, we have the question raised by counsel for defendant, William E. Cook, that that record presents an attempt to alter by parol the terms of a written contract.
The rule is well recognized that where parties have reduced their agreements to writing, which is complete and is not uncertain or ambiguous, the writing will' be presumed to contain the entire agreement. 70 A. L. R. 752. There is a well established exception to the parol evidence rule commonly known as the rule of partial integration. The rule is invoked where the entire agreement of the parties has not been i educed to writing.
It is well settled that contracts may rest partly in parol and partly in writing. 17 O. Jur. 523. Referring to the contract of assignment signed by Mrs.' Ayres and her husband wherein reference is made to the consideration, it is apparent that this is left indefinite and necessarily would have to be shown by parol.
The written memoranda signed by Mrs. Spears is more complete and definite.
Questions of consideration courts of Ohio hold are open to explanation by parol proof. 13 O. Jur. p. 868 (Deeds) §55.
It is our conclusion that the asserted oral contract made by Mother Cook may not be considered as an attempt to alter the terms of the written assignments signed by Mrs. Ayres1 and Mrs. Spears, respectively.
It is entirely a separate oral agreement to which William E. Cook was not a party and, of course, he would not be bound thereby. It was exclusively an oral agreement between Mother Cook and her two daughters and made for the purpose of inducing the latter to release their interest in the partnership. Of course the two daughters received a consideration of $2500.00 each. According to their claim this was not the entire consideration to be received by them and but for the oral promise of Mother Cook, the sale of their *228 partnership interests would not have been made.
Mother Cook was a party to both transactions and the oral agreement if made would be supported by a sufficient consideration. Had Mother Cock placed her promise in writing in proper legal form, although separate from the assignments executed by the daughters, we doubt if any question would be raised as to its legality as a separate contract. If a separate contract, and we conclude it is, this meets the objection that it is an attempt to alter the terms of a written contract.
Counsel for defendant William K Cook raises the further objection that the claimed secret meetings between the mother and the •daughters constitutes a fraud •against him and for that reason, if none other, should not be enforced. We do not think this claim is well founded for the reason that no relief is asked against .him except that he be declared to hold his inherited interest from his mother in trust for the two daughters. The gist of the action is against the estate of the mother. William E. Cook had no vested right to inherit from his mother.
A further principle of law appli•cable is that oral contracts of the character presented in the instant case must be proven by ■clear and convincing evidence. A mere preponderance of the evidence is not sufficient. In the Common Pleas Court the trial court held that the evidence was mot sufficient to prove the issue by clear and convincing evidence. Upon the record before the Common Pleas Court we would probably arrive at the same conclusion, but the supplemental evidence of two •witnesses presented before us establishes the factual question to the degree of proof required under the law.
By reason of the provisions of cur statute law neither the plaintiffs, Mrs. Ayres nor Mrs. Spears nor the defendant William E. Cook could be called as witnesses. The husbands, Spears and Ayres, were eligible as witnesses and were called. According to their testimony they were present and participated in all the transactions, and presented testimony as to the oral agreement with Mother Cook. In the trial Court one other witness was called by counsel for the plaintiffs who presented testimony that Mother Cook on different occasions had told her as to the arrangement through which she was to give the daughters her real estate. The only evidence presented on behalf of the defendant was Roxie E. Chambers, who, over objection of the plaintiff, testified that Mother Cook told her that she had made no will since she desired her children- to share her estate equally. This testimony is not competent and we can give it no consideration. It is to be contrasted with the testimony of plaintiffs’ witness on the same subject in that in the one instance it is properly received as a declaration against interest, whereas in the other instance it is self-serving. If Mother Cook was alive and defending under some proper form of action, no one would gainsay that witnesses might not be called to testify to certain pertinent statements made by Mother Cook, which in their nature were declarations against interest, but she would not be permitted to call a witness who at some other time and place had heard her say directly the opposite. The latter would be purely self-serving.
This is an action against the estate of Mother Cook and the same rule of evidence will apply.
*229 In our Court Corynne Shaffer' 'was called by plaintiffs as a witness. This witness now lives at Edwardsport, Ohio, but formerly lived in Columbus. She is not related to any of the parties. She knew Mrs. Cook in a social and business way. Mrs. Shaffer, while in Columbus, was in the real estate business and during that time contacted Mother Cook in an effort to sell her some real estate. This witness impressed ps as to her sincerity and integrity and so far as we were able to determine v/as unbiased. She testi"fies that on at least two occasions Mother Cook told her as to her verbal promise to will her real estate to her daughters because they had sold their interest in the undertaking business at such a ridiculously low price.
The other witness giving testimony in our court was Mrs. W. H. Harrington now living in Springfield, Illinois; but formerly of Columbus. She v/as the widow of the son Harold, deceased, but since remarried. Following the death of Harold she lived with Mrs. Cook for some time and after moving away frequently returned to visit her. Her testimony in substance is to the same effect as that of the sons-in-law and the witness Mrs. Shaffer. With this added testimony we have no difficulty in determining that the oral agreement was proven by certain, clear and convincing testimony.
This brings us to a consideration of the defense of the statute of frauds as set out in the second defense of the answer of the son, William E. Cook. There can be no question that the oral agreement related to real estate and therefore comes within the direct provisions of §8621 GC. The Supreme Court of Ohio and Appellate Courts have universally held that verbal agreements to leave real property to another by will in consideration of personal services to be rendered by the latter are within the statute of frauds and void. The leading ease on this question is Kling v Bordner, 65 Oh St 86, ¶4 of the syllabus. Also for similar holdings, see the following:
Newbold v Michael, 110 Oh St. 588.
Ortman v Ortman, 45 Oh Ap 551.
See also the following cases applicable in their reasoning:
Crabill v Marsh, 38 Oh St 331.
Hathaway v Jones, 48 Oh Ap 447.
A careful reading of the above cases will- disclose that in each instance it was held that plaintiff had an adequate remedy at law.
An equitable doctrine has been evolved for good and apparent reasons and notwithstanding the statute of frauds equitable relief in a proper case may be granted where a failure to do so would work a fraud upon the complaining party. This principle is purely a creature of equity jurisprudence and is not grounded on any legislative exceptions to the fraud statutes. In our reading we found an illustration as follows: Where A and B had agreed orally to trade1 farms; A executed and delivered his deed and thereafter B refused. An action followed and B put up-the defense that the agreement was in parol and within the statute of frauds. The Court held that notwithstanding the statute, where there was part or full performance, and no other remedy under ordinary legal actions, a court of equity would decree specific performance. The statement was made that the purpose of this statute-was to avoid frauds. Further, that the statute was intended as a. shield and not a sword under the claim of part performance. Part-performance or full performance-standing alone are not sufficient to grant specific peformanee. In addition there always must also- *230 appear that there is no other remedy available to the complaining party. In most of the above cited cases the courts denied specific performance because they had a remedy at law. For instance, in the case of Newbold v Michael, supra, the plaintiff presented testimony of an oral agreement to leave her real estate by will in consideration of personal services in the nature of care and attention in the home, all of which had been performed; the court said that unless the character of the services was not susceptible of being measured by pecuniary standards, or unless the contract had been so far executed that a refusal would 'Operate as a fraud and would result in a denial of just compensation, a prayer for specific performance would not be granted.
Our Court in the case of Ortman v Ortman, supra, followed the same reasoning. All of the other cases above cited are based upon the same principle. The principle granting specific performance where no adequate remedy otherwise exists at law is universally recognized.
A full performance or a part performance under oral contracts subject to the statute of frauds will be taken without the statute when established by clear and convincing testimony and specific performance will be ordered where there exists no adequate remedy at law and a refusal would operate as a fraud upon the party who has performed.
The pertinent principles under specific performance are so fully set out with all its ramifications in O. Jur. Vol. 37 (Specific Performance), §§116 to 140, pp 134 to 161 that we refrain from citing and quoting from specific cases.
The cases are cited in the notes and the text is supported by the cases.
Counsel for defendant refers to §10504-3a GC, as am additional reason why relief should not be granted to the plaintiff. This section is rather new, having been enacted inl935. It reads as follows:
“No agreement to make a will or to make a devise or bequest by will shall be enforcible unless such agreement is m writing, signed by the party making it or by some other person by his express direction, in which latter case the instrument must be subscribed by two or more competent witnesses who heard such party acknowledge that it was so signed by his direction.”
This section appears in the General Code under the chapter on Wills. Nevertheless it is a statute of frauds and could have been very appropriately included as an amendment to §8821 GC. So far as this case is concerned we do not think it adds anything to the general section. We say this for the reason that the oral contract in the instant case related to real estate and hence was covered by §8621 GC. Of course §10504-3a GC, extends the. rule to agreements, to make a will regardless of the subject matter. We are referred to an amendment to §8621 GC, which denied the right to recover commissions for sale of real estate unless the broker’s contract was in writing, and also a number of cases decided by the Ohio courts while such provision was contained in said section. (This amendment has since been repealed.)
In some of the cases cited the broker had entered into a contract before the amendment and had fully performed the services before the amendment. However, he failed to bring his action until aft *231 er the amendment became effective. In these cases relief was denied. However, it will be observed that in each of these cases the broker was seeking to recover money judgment, which was an action at law, and the question of part performance or full performance avails nothing in an action at law.
In the brief of counsel it is pointed out that no court in Ohio has yet determined whether or not in an equitable action the question of part or full performance under §10504-3a GC, would be given the same application as has been done under §8621 GC. We have no difficulty in arriving at the conclusion that the same principle will apply under either section.
Of course, §10504-3a GC is remedial in its nature and our courts have universally held that the constitutional provision against retroactive legislation has no application to legislation of a remedial character. Either or both sections would be applicable and operative if the instant case were an action at law, but being an action in equity, neither will be controlling providing plaintiffs, through their evidence and in the light of the Ohio authorities, bring this within the realm of equitable relief.
It is urged that plaintiffs are chargeable under the law with knowledge of the date of the enactment and that before the effective date, which was 90 days later, there was opportunity to have their agreement put in writing. We do not follow this argument for the following reason: at the time of entering into the oral arrangement the daughters and sons-in-law wanted Mother Cook to put her agreement in writing, but she refused, stating that her wprd was as good as her bond.
The time for1 performance by Mrs. Cook. did not expire so long as she lived. Notwithstanding , that the daughters knew or were chargeable with knowing that §10504-3a GC, was enacted in 1935, there was no available means for the daughters to compel Mother Cook to place the agreement in writing. She died in September, 1938, and up to that time it was presumed that she would make her will, as per agreement, before her death.
Under the state of the record we are constrained to the view that the plaintiffs are entitled to the relief prayed for and it is so ordered.
An entry may be drawn accordingly.
HORNBECK, J., concurs.
GEIGER, PJ., dissents for the reason that the contract is not proven by certain, clear and convincing evidence, and for the further reason that §10504-3a renders unenforcible an oral contract to make a will.