**FONTBANK, INC., Appellant,**

v.

**COMPUSERVE, INC., Appellee.**

[Cite as *Fontbank, Inc. v. CompuServe, Inc.* (2000), 138 Ohio App.3d 801.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 99AP–817.

Decided Aug. 3, 2000.

802

*Manos, Martin, Pergram and Dietz, L.P.A.,* and *Stephen D. Martin,* for appellant.

*Zeiger & Carpenter, John W. Zeiger* and *Marion H. Little, Jr.,* for appellee.

GLASSER, Judge.

Plaintiff-appellant, Fontbank, Inc., appeals from a judgment of the Franklin County Court of Common Pleas dismissing its breach-of-contract action against defendant-appellee, CompuServe, Incorporated, on a motion for judgment on the pleadings.

CompuServe operates a worldwide on-line computer information service. Fontbank develops and markets computer software. This action has its genesis in Fontbank's April 1994 proposal to develop several products for CompuServe. Specifically, Fontbank offered to develop and operate an on-line multimedia superstore, to be known as "Jerry's World," to market items such as fonts, clip art, and graphics over CompuServe's on-line service. As proposed, Jerry's World would market and sell materials both for immediate download and for more traditional "off-line" parcel delivery.

Fontbank also proposed that it develop and manage two on-line forums on CompuServe's on-line service: (1) the "Jerry's World Forum," which was to be dedicated to the discussion and support of products marketed through Jerry's World, and (2) the "Reader's Forum," which was to be dedicated to the discussion of popular literature.

The parties agree that Fontbank made the above proposal, and that as a result of the proposal, they entered into the following two written agreements: (1) a "Service and License Agreement for Electronic Services" ("Service and License Agreement") related to Jerry's World on January 4, 1995, and (2) a "Service Agreement for Forum Managers" in April 1994, which authorized Fontbank to set up and manage the Jerry's World Forum ("Forum Manager's Agreement # 2"). Beyond these several points, the parties' agreement as to the fact ceases.

According to the allegations contained in Fontbank's complaint, CompuServe accepted Fontbank's proposal for Jerry's World shortly after it was presented, and authorized Fontbank to proceed with development of Jerry's World, thereby forming an oral contract between the parties relating to the development of

Jerry's World ("oral development contract"). According to Fontbank, the terms of the oral development contract required Fontbank to develop Jerry's World, CompuServe to provide the resources, infrastructure, and marketing to support Jerry's World, and set a date of August 1994 for having Jerry's World up and operational. Fontbank alleges that this oral development contract was separate and distinct from the Service and License Agreement for Jerry's World subsequently entered into by the parties.

Fontbank's complaint further alleges that Fontbank proceeded with the development of Jerry's World in reliance upon the oral development contract, expending considerable time and money in the process. However, CompuServe breached the oral development contract by failing to complete the database structures necessary to support Jerry's World in a timely manner, repeatedly changing the supporting databases in ways that were inconsistent with the terms of the oral development contract, and restricting the amount of hard drive space available for Jerry's World. As a result of CompuServe's breaches of the oral development contract, Jerry's World did not become operational until March 1995, more than seven months after the operational date established in the oral development contract. In addition, shortly after Jerry's World went on-line, CompuServe informed Fontbank that it would not permit Jerry's World to market and sell products for off-line delivery over its service, in direct contravention of the oral development contract. Together, CompuServe's various breaches of the oral development contract destroyed the overall "superstore" concept envisioned for Jerry's World by that contract.

Fontbank's complaint also alleges that on December 22, 1994, almost four months prior to the parties' entry into Forum Manager's Agreement # 2 in April 1994, the parties entered into a written "Service Agreement for Forum Managers," which authorized Fontbank to set up and manage both the Jerry's World Forum and the Reader's Forum ("Forum Manager's Agreement # 1"). According to Fontbank, while CompuServe went on-line with the Jerry's World Forum, it breached Forum Manager's Agreement # 1 by failing to ever implement the Reader's Forum.

On April 29, 1997, Fontbank filed its complaint in the Franklin County Court of Common Pleas naming CompuServe as defendant and asserting the following eight claims: (I) a claim for breach of the oral development contract, (II) a claim for breach of Forum Manager's Agreement # 1, (III) an implied or quasi contract claim on the oral development contract and Forum Manager's Agreement # 1, (IV) a detrimental reliance claim on the oral development contract and Forum Manager's Agreement # 1, (V) a promissory estoppel claim on the oral development contract and Forum Manager's Agreement # 1, (VI) a fraud-in-the-inducement claim, (VII) a claim for an accounting under the Service and License

Agreement, and (VIII) a claim for fees owed under the Service and License Agreement as established by the accounting requested in claim VII.

On July 14, 1997, CompuServe responded to Fontbank's complaint with an answer and two counterclaims. On February 3, 1998, CompuServe filed a motion for judgment on the pleadings or summary judgment on all counts of Fontbank's complaint. On December 18, 1998, the trial court issued a decision granting judgment on the pleading for CompuServe as to all eight counts of Fontbank's complaint. On June 14, 1999, CompuServe voluntarily dismissed its counterclaims. Accordingly, on June 18, 1999, the trial court filed a judgment entry dismissing Fontbank's complaint for the reasons set forth in its decision of December 18, 1998. Fontbank appeals therefrom, assigning the following errors:

"Assignment of Error No. 1:

"The trial court committed prejudicial error in considering, as a motion for judgment on the pleadings pursuant to Civil Rule 12(C), the 'motion of CompuServe, Incorporated for judgment on the pleadings and/or summary judgment on all counts of plaintiff's complaint,' which referenced in its memorandum in support facts and documents outside the pleadings and which contained an affidavit as an exhibit.

"Assignment of Error No. 2:

"The trial court committed prejudicial error in granting judgment on the pleadings against plaintiff/appellant as to claims for breach of contract, implied or quasi contract, detrimental reliance, promissory estoppel, and fraud in the inducement (claims one, three, four, five and six respectively of the complaint) which were based upon an oral product development agreement, on the basis of an integration clause in a subsequent written non–exclusive product licensing agreement.

"Assignment of Error No. 3:

"The trial court committed prejudicial error in granting judgment on the pleadings against plaintiff/appellant as to claim six's claim of fraud in the inducement as to the written non–exclusive product licensing agreement.

"Assignment of Error No. 4:

"The trial court committed prejudicial error in granting judgment on the pleadings against plaintiff/appellant as to claim six's claim of fraud in the inducement as to the forum managers agreement.

"Assignment of Error No. 5:

"The trial court committed prejudicial error in granting judgment on the pleadings against plaintiff/appellant as to claim two of its complaint.

"Assignment of Error No. 6:

"The trial court committed prejudicial error in granting judgment on the pleadings against plaintiff/appellant as to claim seven and claim eight of its complaint."

■ Preliminarily, as this matter arises out of the granting of a motion for judgment on the pleadings under Civ.R. 12(C), we must conduct a *de novo* review of all legal issues without deference to the determination of the trial court. *Flanagan v. Williams* (1993), 87 Ohio App.3d 768, 772, 623 N.E.2d 185, 187–188. A motion for judgment on the pleadings pursuant to Civ.R. 12(C) presents only questions of law. *Compton v. 7–Up Bottling Co./Brooks Beverage Mgt.* (1997), 119 Ohio App.3d 490, 492, 695 N.E.2d 818, 819–820. Determination of a motion for judgment on the pleadings is restricted solely to the allegations in the pleadings and any writings attached to the complaint.[1] *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 165, 63 O.O.2d 262, 264, 297 N.E.2d 113, 116–117. Dismissal is appropriate under Civ.R. 12(C) on where, construing all material allegations in the complaint, along with all reasonable inferences drawn therefrom in favor of the nonmoving party, the court finds that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *State ex rel. Midwest Pride IV, Inc. v. Pontious* (1996), 75 Ohio St.3d 565, 570, 664 N.E.2d 931, 936.

■ In its first assignment of error, Fontbank asserts that the trial court erred in considering CompuServe's motion for judgment on the pleadings, since the memorandum in support of the motion contained references to an affidavit and an exhibit that were attached in support of the alternative motion for summary judgment. In making this argument, Fontbank acknowledges that the trial court, in its decision granting CompuServe's motion for judgment on the pleadings, expressly stated that it was considering only the pleadings and was not considering the affidavit or exhibit attached to CompuServe's motion.

Essentially, Fontbank asserts that where a motion for judgment on the pleadings is combined with another motion, such as a motion for summary judgment, the determination of which will require consideration of matters outside the pleadings, the trial court may not consider the motion for judgment on the pleadings, but may rule only on the motion requiring consideration of matters outside the pleadings. Fontbank has failed to cite any authority in support of this novel proposition, and we have found none. Fontbank's first assignment of error is overruled.

---

1. Civ.R. 10(C) provides in part that "[a] copy of any written instrument attached to a pleading is a part thereof for all purposes."

In its second assignment of error, Fontbank challenges the trial court's dismissal of its claims for breach of contract, quasi-contract, detrimental reliance, and promissory estoppel arising out of the alleged oral development contract on the basis of the parol evidence rule.

■ The parol evidence rule is a substantive rule of law intended to protect the integrity of written contracts. *Ed Schory & Sons, Inc. v. Society Natl. Bank* (1996), 75 Ohio St.3d 433, 440, 662 N.E.2d 1074, 1080. To this end, the parol evidence rule prohibits a party to a written contract, which is the complete and accurate integration of the parties' agreement, from varying, contradicting, or adding to the terms of the written contract with evidence of prior or contemporaneous agreements, either written or oral. *Id.; Natl. City Bank, Akron v. Donaldson* (1994), 95 Ohio App.3d 241, 245, 642 N.E.2d 58, 60–61; *Burton v. Elsea, Inc.* (Dec. 27, 1999), Scioto App. No. 97CA2556, unreported, 1999 WL 1285874; *Pingue v. Durante* (May 9, 1996), Franklin App. No 95APG09–1241, unreported, 1996 WL 239642.

■ The parol evidence rule derives from the corollary principle of "contract integration," which provides that a written contract which appears to be complete and unambiguous on its face will be presumed to embody the final and complete expression of the parties' agreement. *Cleland v. Cleland* (1958), 79 Ohio Law Abs. 566, 568, 7 O.O.2d 206, 152 N.E.2d 914; *Ayres v. Cook* (1941), 37 Ohio Law Abs. 224, 227, 46 N.E.2d 629. *See, also, Burton, supra* (stating that the parties to a written contract are presumed to have expressed their intent through the language employed in the contract). That is, a written contract will be presumed to be a complete "integration" of the parties' agreement. This presumption is strongest where a written agreement contains a merger or integration clause expressly indicating that the agreement constitutes the parties' complete and final understanding regarding its subject matter. *Burton, supra.*

Fontbank's complaint asserts that the oral development contract obligated CompuServe to assist in the development of Jerry's World by providing the necessary database structures to support Jerry's World, to provide the hard drive space to support Jerry's World on its service, and to promote and market Jerry's World, and that CompuServe breached the oral development agreement by failing to meet these obligations.

In response to Fontbank's claims related to the oral development contract, CompuServe contends that the Service and License Agreement contains the parties' complete and final agreement concerning Jerry's World, and that Fontbank is therefore prohibited from presenting any evidence of the alleged prior oral development contract that pertains to the same subject matter.

■ The Service and License Agreement contain the following merger clause: "This Agreement constitutes the entire Agreement between the parties concerning the Product and supersedes all proposals, oral and written, and all negotiations, conversations, and other communications between the parties." Although Jerry's World is not expressly mentioned anywhere in the Service and License Agreement itself, Fontbank has conceded in its complaint that Jerry's World is the "Product" that is the subject of the Service and License Agreement. Accordingly, we can only conclude that Fontbank agreed. that the Service and License Agreement would constitute the entire agreement between the parties concerning Jerry's World, and that it would supersede all prior communications concerning Jerry's World. As a result, the parol evidence rule prohibits Fontbank from presenting any evidence to support its claims for breach of contract, quasi-contract, detrimental reliance, and promissory estoppel arising out of the alleged oral development contract (claims I, III, IV, and V). Accordingly, the trial court properly granted judgment on the pleadings for CompuServe on these claims. Fontbank's second assignment of error is overruled.

Fontbank's third and fourth assignments of error will be addressed together, as both assert that the trial court erred in dismissing Fontbank's fraud-in-the-inducement claim.

The trial court dismissed Fontbank's fraud claim on the basis of the parol evidence rule and the Statute of Frauds. Specifically, the trial court appears to have concluded that Fontbank's fraud claim was an attempt to enforce the oral development agreement and Forum Manager's Agreement # 1. Accordingly, the trial court dismissed the fraud claim on the same grounds that it dismissed Fontbank's other claims seeking to enforce these agreements. The trial court misconstrued Fontbank's fraud claim.

In fact, Fontbank's fraud claim does not seek to enforce any written or oral contract. Instead, Fontbank's fraud claim seeks damages for fraud based upon an alleged misrepresentation. Specifically, Fontbank's fraud claim alleges that CompuServe fraudulently misrepresented the size of its customer base, which mislead Fontbank as to the potential number of customers who would be able to access Jerry's World, and thereby induced Fontbank to enter into the oral development agreement, the Service and License Agreement, and Forum Managers Agreements # 1 and # 2. Rather than seeking damages based upon any of these contracts, the fraud claim seeks damages resulting from Fontbank's reliance on the alleged fraud.

■ As previously noted, the parol evidence rule prevents the enforcement of prior written or oral contracts where there exists a subsequent integrated written contract on the same subject. Similarly, the Statute of Frauds prevents the enforcement of oral or unsigned written contracts in certain situations.

Because Fontbank's fraud claim does not seek enforcement of a contract, neither the parol evidence rule nor the statute of frauds has any application to the claim. See *Finomore v. Epstein* (1984), 18 Ohio App.3d 88, 89, 18 OBR 403, 404–405, 481 N.E.2d 1193, 1194–1195; *Edwards v. Thomas H. Lurie & Assoc.* (Jan. 12, 1995), Franklin App. No. 94APE01–21, unreported, 1995 WL 12126. However, a principle, analogous to the parol evidence rule and the Statute of Frauds, holds that a fraud claim may not be maintained where the alleged fraud is directly contradicted by a signed writing. *Marion Production Credit Assn. v. Cochran* (1988), 40 Ohio St.3d 265, 274–275, 533 N.E.2d 325, 333–335 (applying the "directly contradicted" standard in a case where the plaintiff's contract claims were barred by the Statute of Frauds); *Edwards, supra* (applying the "directly contradicted" standard in case where the plaintiff's contract claims were barred by the parol evidence rule).

In the present case, CompuServe asserts, and the trial court concluded that Fontbank's alleged misrepresentation regarding the size of its customer base was directly contradicted by paragraph 3(b) of the Service and License Agreement. We agree.

Fontbank's fraud claim alleges that CompuServe misrepresented the size of its customer base, which mislead Fontbank as to the potential number of customers who would be able to access Jerry's World, and thereby induced Fontbank to enter into various written and oral agreements.

Paragraph 3(b) of the Service and License Agreement provides as follows: "CompuServe will, *at its discretion,* make the Product available for purchase or license by Users, and provide mechanisms for electronic delivery of the Product from the Service to Purchasers." (Emphasis added.) This provision provided CompuServe with complete discretion regarding how many, if any, of its customers it would permit to access Jerry's World.

After comparing Fontbank's fraud allegation to paragraph 3(b) of the Service and License Agreement, we can only conclude that they are directly contradictory. Fontbank's fraud claim alleges that CompuServe mislead it regarding the number of customers who would be able to access Jerry's World. However, paragraph 3(b) expressly vests CompuServe with the discretion to prevent any of its customers from accessing Jerry's World if it so chose. There is simply no way that Fontbank's alleged belief that a certain number of CompuServe customers would be able to access Jerry's World can be read consistently with paragraph 3(b)'s blanket grant of discretion to CompuServe to determine how many, if any, of its customers will be able to access Jerry's World. Accordingly, the trial court did not err in dismissing Fontbank's fraud claim (claim VI) pursuant to Civ.R. 12(C). Fontbank's third and fourth assignments of error are overruled.

In its second assignment of error, Fontbank argues that the trial court erred in dismissing its claims for breach of contract, quasi-contract, detrimental reliance, and promissory estoppel arising out of Forum Manager's Agreement # 1.

The trial court dismissed Fontbank's claims arising out of Forum Manager's Agreement # 1 on the basis of the Statute of Frauds set forth in R.C. 1335.05, which provides:

"No action shall be brought * * * upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized."

It is apparent from a review of Forum Manager's Agreement # 1 that the agreement was not to be performed within one year. Paragraph 12 of the agreement entitled "TERM" provides:

"This Agreement shall be effective from the date of its written acceptance by both parties and shall continue in force for an initial term of two years and thereafter for consecutive two year terms until terminated within the provisions of Paragraph 13."

Accordingly, Forum Manager's Agreement # 1 is subject to the Statute of Frauds.

However, in dismissing Fontbank's claims arising out of Forum Manager's Agreement # 1 the trial court simply assumed that the agreement was not "signed" for the purposes of the Statute of Frauds. Apparently, the trial court based this assumption upon paragraphs 47 and 49 of Fontbank's complaint in which Fontbank alleges that after it executed and returned the initialed copy of Forum Manager's Agreement # 1 to CompuServe, CompuServe "did not return a fully completed and signed copy of the forum managers agreement." The trial court appears to have taken these allegations as admissions by Fontbank that (1) the parties never finally entered into Forum Manager's Agreement # 1, and (2) that CompuServe never "signed" Forum Manager's Agreement # 1 for purposes of the Statute of Frauds. Our review of all of the allegations regarding Forum Manager's Agreement # 1 contained in Fontbank's complaint leads us to conclude that the trial court construed paragraphs 47 and 49 of Fontbank's complaint, together with the inferences drawn therefrom, in favor of CompuServe, rather than Fontbank. Such a construction of these paragraphs was improper when considering CompuServe's motion for judgment on the pleadings pursuant to Civ.R. 12(C). *State ex rel. Midwest Pride, supra.*

When all of the allegations in Fontbank's complaint regarding Forum Manager's Agreement # 1 are read together and construed in Fontbank's favor, it is

apparent that Fontbank does not admit either that it never finally entered into Forum Manager's Agreement # 1 with CompuServe, or that Forum Manager's Agreement # 1 was not "signed" by CompuServe for purposes of the Statute of Frauds. Specifically, construing the allegations in Fontbank's complaint, along with all reasonable inferences drawn therefrom in Fontbank's favor, Fontbank's complaint alleges the following with regard to its claims arising out of Forum Manager's Agreement # 1: In December 1994, CompuServe's Marketing Manager, Greg Russell, sent Fontbank a copy of Forum Manager's Agreement # 1 dealing with the establishment of Jerry's World Forum and the Reader's Forum. The copy of Forum Manager's Agreement # 1 received by Fontbank had been initialed by two CompuServe employees near the signature line reserved for CompuServe.

Reasonably believing that the initialed copy of Forum Manager's Agreement # 1 constituted an offer from CompuServe to enter into the agreement, Fontbank's President, Jerry Saperstein, accepted the offer by signing the agreement on the signature line reserved for Fontbank and returning the document to CompuServe on December 22, 1994. Fontbank never received a fully signed copy of Forum Manager's Agreement # 1 back from CompuServe.

After Fontbank sent the copy of Forum Manger's Agreement # 1 signed by its president back to CompuServe, CompuServe went on-line with Jerry's World Forum, but not Reader's Forum.

Shortly after going on-line with Jerry's World Forum, CompuServe sent Fontbank a copy of Forum Manager's Agreement # 2, which was identical to Forum Manager's Agreement # 1 except that it had been initialed only by one CompuServe employee near the signature line reserved for CompuServe, and all references to Reader's Forum had been deleted. Wishing to protect its rights to manage at least Jerry's World Forum, Fontbank's president signed Forum Manager's Agreement # 2 and returned it to CompuServe on April 19, 1995. After receiving the copy of Forum Manager's Agreement # 2 signed by Fontbank's president, CompuServe had its corporate counsel sign the agreement on April 24, 1995, and then returned a signed copy to Fontbank.

The question of whether a document complies with the Statute of Frauds is a question of law. *Ruhe v. Hemmelgarn* (Aug. 22, 1997), Darke App. No. 96–CA–1423, unreported, 1997 WL 476687. Further, initials on a contract will satisfy the Statute of Frauds where they are the initials of the party against whom the contract is sought to be enforced, or those of an individual lawfully authorized to bind the party charged. *Morrison v. Devore Trucking, Inc.* (1980), 68 Ohio App.2d 140, 142, 22 O.O.3d 252, 253, 428 N.E.2d 438, 440–441; *Hongosh v. Piszko* (May 19, 1983), Cuyahoga App. No. 45623, unreported, 1983 WL 3003. In the present case, the two sets of initials which appear on Forum Manager's

Agreement # 1 near the signature line reserved for CompuServe create a material issue of fact as to whether the CompuServe employees who initialed the agreement had the authority to bind CompuServe.

CompuServe argues, however, that Fontbank has waived the right to argue that Forum Manager's Agreement # 1 is a contract and that the initials satisfy the Statute of Frauds, as it did not raise these arguments in the trial court. CompuServe's argument, that Fontbank had a duty to respond to its request for judgment on the pleadings on the grounds of the Statute of Frauds, exhibits a misunderstanding of the parties' respective burdens upon the filing of a motion for judgment on the pleadings. Where a party moves for judgment on the pleadings based upon an affirmative defense raised in its answer, such as the Statute of Frauds, and the assertion of the affirmative defense raises a material issue of fact on the face of the pleadings, the motion for judgment on the pleadings must be denied. C. Wright & A. Miller, 5A Federal Practice and Procedure (2 Ed. 1990) 529, Section 1368. Because the pleadings raised an issue of fact with respect to whether Forum Manager's Agreement # 1 satisfies the Statute of Frauds, Fontbank had no duty to respond to CompuServe's Statute of Frauds argument.

Further, because there exists an issue of fact regarding whether Forum Manger's Agreement # 1 satisfies the Statute of Frauds, the trial court erred in granting judgment on the pleadings for CompuServe on Fontbank's claims arising out of Forum Manager's Agreement # 1.[2]

CompuServe argues, however, that the parol evidence rule nonetheless entitles it to judgment on the pleadings on Fontbank's claims arising out of Forum Manager's Agreement # 1. According to CompuServe, Forum Manager's Agreement # 2 constitutes a complete and final integration of the parties' agreement regarding all forums, and the parol evidence rule therefore prohibits Fontbank from introducing evidence of Forum Manager's Agreement # 1.

The allegations in Fontbank's pleading are sufficient to support a claim that the parties entered into two largely redundant contracts. The existence of the question of fact regarding whether the parties entered into one or two forum manager's agreements is sufficient to overcome the general presumption in favor of finding the latter contract to be integrated. This, however, does not end our parol evidence rule inquiry, as Forum Manager's Agreement # 2 contains a merger clause.

---

**2.** If, on remand, the trial court should find that the initials on Forum Manager's Agreement # 1 were made by someone with the authority to bind CompuServe, there remains the factual question of whether the requisite contract elements of offer and acceptance were present.

The merger clause in Forum Manager's Agreement # 2 provides as follows: "This Agreement constitutes the entire Agreement between the parties concerning the Forum and supersedes all proposals, oral or written, and all negotiations, conversations, and other communications between the parties." Notably, this merger clause does purport to make Forum Manager's Agreement # 2 the parties' entire agreement concerning all forums, but only "concerning the Forum." Paragraph 1 of Forum Manager's Agreement # 2 provides that "the Forum * * * is defined in Schedule A." Schedule A's reference to "the forum," in turn, refers only to Jerry's World Forum. Thus, Forum Manager's Agreement # 2 constitutes the parties' integrated agreement only with respect to the Jerry's World Forum, but not with respect to Reader's Forum. Consequently, the parol evidence rule does not bar Fontbank from presenting evidence of Forum Manager's Agreement # 1's terms regarding Reader's Forum.

The trial court erred in dismissing Fontbank's claims for breach of contract, quasi-contract, detrimental reliance, and promissory estoppel arising out of Forum Manager's Agreement # 1 (counts II, III, IV, and V). Fontbank's fifth assignment of error is sustained.

In its sixth assignment of error, Fontbank argues that the trial court erred in dismissing its claims for an accounting under the Service and License Agreement, and for unpaid fees as established by the accounting.

"An action for an accounting seeks a determination by a court of what may be due the respective parties as a result of the relationship between them." *Moore v. Sweda* (1985), 27 Ohio App.3d 38, 39, 27 OBR 40, 41, 499 N.E.2d 371, 373. However, in order to survive a motion for judgment on the pleadings, a claim for an accounting, like any claim, must set forth operative facts, which when construed in the claimant's favor, establish a right to the requested relief. See *Lin v. Gatehouse Const. Co.* (1992), 84 Ohio App.3d 96, 99, 616 N.E.2d 519, 521; *Gunaris v. Holiday Lakes Prop. Owners Assn., Inc.* (Feb. 12, 1999), Huron App. No. H–98–032, unreported, 1999 WL 63660. In the present case, Fontbank's claims for an accounting and for payment of unpaid fees established thereby merely assert that Fontbank is entitled to receive an accounting from CompuServe. This allegation does not provide any legal basis for Fontbank's entitlement to an accounting from CompuServe. Accordingly, Fontbank's claims for an accounting, and for unpaid fees established by the accounting (counts VII and VIII) were properly dismissed. Fontbank's sixth assignment of error is overruled.

Having overruled Fontbank's first, second, third, fourth, and sixth assignments of error, but having sustained Fontbank's fifth assignment of error, the judgment

of the trial court is affirmed in part and reversed in part, and this matter is remanded to the trial court for further proceedings in accordance herewith.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

LAZARUS and PETREE, JJ., concur.

GEORGE M. GLASSER, J., retired, of the Sixth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.