[Cite as *Mallory v. Cincinnati*, 2012-Ohio-2861.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| MARK MALLORY, | : | APPEAL NO. C-110563 |
| | | TRIAL NO. A-1103447 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| CITY OF CINCINNATI, | : | |
| Defendant-Appellant. | : | |


Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  June 27, 2012


*Waite, Schneider, Bayless, & Chesley Co., L.P.A.*, *Paul M. De Marco* and *W.B. Markovits*, for Plaintiff-Appellee,

*Terrance Nestor*, Assistant City Solicitor, for Defendant-Appellant.


Please note:  This case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1} Defendant-appellant the city of Cincinnati ("City") appeals the judgment of the Hamilton County Court of Common Pleas granting Cincinnati Mayor Mark Mallory's motion for judgment on the pleadings in this declaratory-judgment action and determining that Mallory's car allowance and health-insurance benefits were not included in Mallory's compensation, as that term is defined by the Charter of the City of Cincinnati ("Charter"). We determine that the trial court lacked subject-matter jurisdiction over this case; therefore, we reverse the trial court's judgment and remand the case to the trial court with instructions to dismiss Mallory's complaint.

### *Factual and Procedural Background*

{¶2} As alleged in the complaint, Mallory has received the equivalent of $500 per month as a car allowance from the City. This allowance went toward the loan payment, insurance, maintenance, and gasoline for the car that Mallory regularly has used to perform his mayoral duties. Mallory also has received health-insurance benefits paid twice each month by the City. Mallory alleged that he "endeavored to determine before filing this action[,]" presumably from the City, whether the car allowance and health-insurance benefits were considered part of his "compensation," as that term is used in the Charter.

{¶3} The Charter provides in Article III, Section 1: "The mayor shall receive annual compensation in an amount equal to twice the compensation payable to a member of council as provided in Article II, Section 4. Such compensation shall be payable semi-monthly." In turn, Article II, Section 4 provides: "Each member of

council shall receive, subject to the provisions of Section 4a herein, annual compensation in an amount equal to three-fourths (3/4) of the annual compensation payable to the county commissioners of Hamilton, County, Ohio, as it existed on March 1, 2005. Such compensation shall be payable semi-monthly." Finally, Article II, Section 4a states: "Council shall not receive any increase in compensation, which is from time to time adopted by the Ohio General Assembly for the county commissioners of Hamilton County, Ohio, and of which percentage increase council receives an amount equal to three-fourths (3/4) of the percentage increase, unless such increase is individually ratified by a two-thirds (2/3) vote of the members of council."

{¶4} Mallory requested that the court, pursuant to R.C. 2721.02(A), issue a declaratory judgment that his car allowance and health-insurance benefits were not part of his compensation under the Charter. Mallory also filed a motion for a temporary restraining order enjoining the City from distributing his car allowance and health-insurance benefits until the issue could be resolved.

{¶5} The City answered Mallory's complaint without objecting to the issuance of an injunction and affirmatively requested an injunction as well. In response to Mallory's allegation that his benefits were not compensation, the City did not deny the allegation, but instead averred that the Ohio Supreme Court, in *State ex rel. Parsons v. Ferguson*, 46 Ohio St.2d 389, 391, 348 N.E.2d 692 (1976), determined that fringe benefits constituted compensation under the Ohio Constitution, Section 20, Article II, in a case involving an elected county officer. The City requested in its answer that the court "determine if fringe benefits provided to elected officials by the City are [c]ompensation under the Charter." The City also

demanded that, as parties allegedly affected by this action, each city council member receiving health-insurance benefits paid for by the City be joined as a party to the action, in accordance with R.C. 2721.12.

{¶6} Both Mallory and the City moved separately for judgment on the pleadings under Civ.R. 12(C). In Mallory's motion, he requested that the trial court grant his request for declaratory judgment in the complaint and declare that his health-insurance benefits and car allowance were not part of his compensation. The City conceded that Mallory's interpretation of the Charter was reasonable, but "extreme."

{¶7} The City also set forth two additional ways to interpret the Charter's compensation scheme with regard to benefits. The City argued that one option included calculating the mayor's compensation based on the maximum compensation package available to a Hamilton County commissioner in March 1, 2005. The second option would allow the City to dictate the benefits provided to elected officials based on the concept of local self-government. The City requested that the court resolve the issue.

{¶8} The trial court granted Mallory's motion for judgment on the pleadings and issued a declaratory judgment that Mallory's health-insurance benefits and car allowance were not part of his compensation as that term is defined in the Charter. The trial court reasoned that in order to calculate mayoral compensation under the Charter's compensation formula, each city council member and each county commissioner must have received an identical amount of compensation, because the Charter required that the City pay the mayor "twice the compensation payable to a member of council" and that each member of council receive three-fourths of the

"annual compensation payable to the county commissioners of Hamilton, County, Ohio * * *." Because the City paid differing amounts for council members' health insurance depending on the type of plan selected by the council member, and because the county paid differing benefits for the commissioners, the trial court reasoned, the Charter's formula would necessarily fail if health-insurance benefits were included in the definition of compensation.

{¶9} The City now appeals in a single assignment of error, asserting that the trial court erred in entering a declaratory judgment for Mallory. The City requests that this court declare that compensation under the Charter includes salary plus benefits. We review the granting of motion for judgment on the pleadings under Civ.R. 12(C) de novo. *Fontbank, Inc. v. CompuServe, Inc.*, 138 Ohio App.3d 801, 807, 742 N.E.2d 674 (10th Dist.2000).

### Actual Controversy Requirement

{¶10} The Ohio Constitution, Article IV, Section 4(B), limits the subject-matter jurisdiction of common pleas courts to "justiciable matters," which the Ohio Supreme Court has interpreted to mean an actual controversy between the parties. *State ex rel. Barclays Bank PLC v. Hamilton Cty. Court of Common Pleas*, 74 Ohio St.3d 536, 542, 660 N.E.2d 458 (1996). This is true even in an action for a declaratory judgment. *Mid-Am. Fire & Cas. Co. v. Heasley*, 113 Ohio St.3d 133, 2007-Ohio-1248, 863 N.E.2d 142, ¶ 9. "A 'controversy' exists for purposes of a declaratory judgment when there is a genuine dispute between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Wagner v. Cleveland*, 62 Ohio App.3d 8, 13, 574 N.E.2d 533 (8th Dist.1988), citing *Burger Brewing Co. v. Liquor Control Comm.*, 34 Ohio

St.2d 93, 296 N.E.2d 261 (1973); *see also Kincaid v. Erie Ins. Co.*, 128 Ohio St.3d 322, 2010-Ohio-6036, 944 N.E.2d 207, ¶ 10 (internal citations omitted) (an actual controversy is "more than a disagreement; the parties must have adverse legal interests."). In other words, the plaintiff must seek the "protection of the law" from the "adverse conduct or adverse property interest" of a party. *State ex rel. Barclays Bank PLC* at 542.

{¶11} Ohio's Declaratory Judgment Act is a statutory scheme created in derogation of the common law, and the existence of jurisdiction in a declaratory-judgment action must be evident from the allegations in the complaint. *See Van Stone v. Van Stone*, 95 Ohio App. 406, 411, 120 N.E.2d 154 (6th Dist.1952). If the complaint fails to show the existence of a real, present dispute, then any opinion by a court would be merely advisory—and it is a well-established principle of law that a court cannot issue an advisory opinion. *See Scott v. Houk*, 127 Ohio St.3d 317, 2010-Ohio-5805, 939 N.E.2d 835, ¶ 22.

{¶12} The Ninth Appellate District confronted the issue of whether a justiciable controversy existed in a declaratory-judgment action in *State ex rel. Bolin v. Ohio EPA*, 82 Ohio App.3d 410, 612 N.E.2d 498 (9th Dist.1992). In *Bolin*, plaintiff Bolin entered into an agreement with Shell Oil Company whereby Shell agreed to purchase Bolin's property if Bolin would reduce soil and groundwater contamination to acceptable levels. *Id.* at 411. Bolin hired a company that remediated the contamination on Bolin's property, and that company then sought confirmation from the Ohio EPA that the property complied with applicable environmental laws. *Id.* The Ohio EPA responded to the company by letter stating that it would neither confirm the remediation measures, nor conduct its own tests, but that it reserved the

6

right to conduct future tests. *Id.* Bolin filed a declaratory-judgment action against the Ohio EPA, its director, and the state, alleging that, as a result of the Ohio EPA's refusal to confirm that his property was in compliance with Ohio's environmental statutes governing hazardous wastes and water pollution, Shell would not exercise its option to purchase his property. *Id.* at 412. Bolin specifically sought a declaratory judgment that his property complied with the applicable environmental laws and was exempt from Ohio EPA regulation. *Id.*

{¶13} The trial court granted the Ohio EPA and the other defendants' motion to dismiss the complaint under Civ.R. 12(B)(6), and Bolin appealed. As to Bolin's request for declaratory judgment, the Ninth District determined that no justiciable controversy existed between Bolin and the Ohio EPA. *Id.* at 415. In reaching this determination, the Ninth District reasoned that the Ohio EPA had never claimed that Bolin's property had not been in compliance with applicable laws, nor had it initiated any investigation or proceeding claiming noncompliance. *Id.* Thus, the Ninth District affirmed the trial court's dismissal of Bolin's complaint for declaratory judgment.

{¶14} Similar to the holding in *Bolin* that no actual controversy existed, Mallory's complaint fails to allege the existence of an actual controversy between Mallory and the City. Just as in *Bolin*, where Bolin had not been subjected to any adverse conduct by the Ohio EPA, Mallory had not been subject to any adverse conduct by the City because the City had not been treating Mallory's car allowance and health-insurance benefits as compensation under the Charter. Nor did Mallory allege in his complaint that the City had ever indicated that the City intended to treat the car allowance and health-insurance benefits as compensation. Instead, Mallory

alleged only that he had "endeavored to determine" whether his car allowance and health-insurance benefits were considered part of his compensation before he filed his action.

{¶15} The record reflects that the City did not directly dispute Mallory's position at the trial-court level and has only now, in its appeal to this court, asserted that Mallory's health-insurance benefits and car allowance should be part of his compensation. In its answer to Mallory's complaint, the City did not deny Mallory's allegation that his benefits were not compensation under the Charter, and instead, the City simply requested that the court resolve the issue. The City did not file a response in opposition to Mallory's motion for judgment on the pleadings, and in its own motion for judgment on the pleadings, the City conceded that Mallory's interpretation of the Charter was reasonable, though extreme.

{¶16} It is clear from the record that no justiciable controversy existed between Mallory and the City. Therefore, the trial court lacked subject-matter jurisdiction to proceed over Mallory's complaint, its decision was merely advisory, and Mallory's complaint must be dismissed.

### Necessary Parties in a Declaratory-Judgment Action

{¶17} Even if an actual controversy had existed between Mallory and the City, the trial court still lacked jurisdiction to enter a declaratory judgment because the judgment necessarily determined the interests of those who, despite the City's request, were not made parties to the proceedings—namely members of city council. R.C. 2721.12, part of Ohio's Declaratory Judgment Act, provides that "all persons who have or claim any interest that would be affected by [a] declaration shall be made parties to the action or proceeding." In a declaratory-judgment action, a

8

nonparty is a necessary party when the nonparty "has a legally protectable interest in rights that are the subject matter of the action." *Rumpke Sanitary Landfill, Inc. v. State*, 128 Ohio St.3d 41, 2010-Ohio-6037, 941 N.E.2d 1161, ¶ 15. A court is precluded from entering a declaratory judgment in the absence of a necessary party because such an absence is a jurisdictional defect. *Bretton Ridge Homeowners Club v. DeAngelis*, 51 Ohio App.3d 183, 185, 555 N.E.2d 663 (8th Dist.1988), citing *Cincinnati v. Whitman*, 44 Ohio St.2d 58, 59, 337 N.E.2d 773 (1975).

{¶18} Because the Charter's compensation formula calculated the mayor's compensation based on the compensation of Cincinnati council members, any declaration by a court regarding the meaning of the mayor's compensation under the Charter would necessarily determine the calculation of compensation for the council members. We determine that, if there were a justiciable controversy, then the council members had legally protectable interests in the rights adjudicated between Mallory and the City regarding the meaning of compensation under the Charter and, as such, were necessary parties.

{¶19} The City recognized the effect Mallory's requested declaration would have on the council members, and in its answer, the City requested that each council member be made a party to the action, which showed that the City did not represent the interests of the individual city council members. The trial court never acted on the City's request to join the council members, nor does the record reflect that the City renewed its request prior to judgment.

{¶20} Therefore, because the pleadings indicate that the council members were necessary parties in the action between Mallory and the City with regard to the meaning of compensation under the Charter, and the council members were never

9

joined as parties, assuming that a justiciable controversy existed, the trial court did not have jurisdiction to enter a declaratory judgment in the council members' absence under R.C. 2721.12.

### *Judgment on the Pleadings*

{¶21} Apart from the jurisdictional issues, the trial court's judgment relies on assertions contained outside the pleadings. The trial court determined that in order to calculate mayoral compensation under the Charter's compensation formula, each city council member and Hamilton County commissioner (in March 2005) must have received an identical amount of compensation. Because the City allegedly paid differing amounts for council members' health insurance depending on the type of plan selected by the council member, and because the county allegedly paid differing amounts for the commissioners' health insurance, the trial court reasoned that the Charter's formula would necessarily fail if health-insurance benefits were included in the definition of compensation.

{¶22} The trial court's decision relies on the assertions that the City paid differing amounts for council members' health-insurance benefits and that the county paid differing amounts for the commissioners' health-insurance benefits in March 2005. These assertions, however, do not appear in the pleadings, and a determination under Civ.R. 12(C) must be made solely on the allegations in the pleadings and any material attached or incorporated in those pleadings. *Peterson v. Teodosio*, 34 Ohio St.2d 161, 165-166, 297 N.E.2d 113 (1973).

### *Conclusion*

{¶23} Consequently, we sustain the City's assignment of error to the limited extent that we determine that the trial court erred in granting Mallory's motion for

judgment on the pleadings and entering a declaratory judgment that Mallory's health-insurance benefits and car allowance were not part of his compensation, as that term is defined under the Charter. We reverse the trial court's judgment and remand the case to the trial court with instructions to dismiss Mallory's complaint for lack of subject-matter jurisdiction.

Judgment reversed and cause remanded.

**SUNDERMANN, P.J.,** and **DINKELACKER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.