[Cite as *P.J. Lindy & Co., Inc. v. Savage*, 2019-Ohio-736.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

| | |
|---|---|
| P.J. Lindy & Co., Inc., etc. | Court of Appeals No. E-18-028 |
| Appellant | Trial Court No. 2017-CV-0638 |
| v. | |
| Garry N. Savage, et al. | **DECISION AND JUDGMENT** |
| Appellees | Decided: March 1, 2019 |

* * * * *

Michael P. Gilbride and James E. Peters, for appellant.

Peter J. McGory and John M. Felter, for appellees.

* * * * *

**MAYLE, P.J.**

{¶ 1} Plaintiff-appellant, P.J. Lindy & Co., Inc. dba Blue Ribbon Catering ("P.J. Lindy"), filed this accelerated appeal from the April 26, 2018 judgment of the Erie County Court of Common Pleas granting summary judgment to defendants-appellees,

Garry N. Savage and Joanne M. Savage (collectively, the "Savages"), and dismissing the complaint with prejudice. For the following reasons, we reverse the trial court judgment.

## I. Background

{¶ 2} On December 14, 2016, P.J. Lindy entered into a real estate purchase contract with the Savages, through which P.J. Lindy purchased 4.3 acres of real estate located at 1023 Main Street in Huron, Ohio. The contract was executed by the Savages, on their own behalf, and by Melissa Viviano, the owner of P.J. Lindy, on behalf of the company. Before the sale, the Savages had been using the property as a full-service banquet facility, and Viviano intended to use the property in the same manner. The property includes two separate banquet halls, which Viviano planned to rent out for wedding receptions, graduation parties, retirement parties, and other catered functions.

{¶ 3} Viviano claims that before the sale, the Savages fraudulently misrepresented that P.J. Lindy could serve alcohol on the property, host outdoor functions, and hold late-night events on site. After P.J. Lindy purchased the property, Viviano learned that the property was subject to various operating restrictions imposed via a conditional use permit issued by the City of Huron Building and Zoning Appeals Board (dated January 17, 1995) that prevented her from using the property as she had intended. Specifically, the conditional use permit banned alcohol from the property, prohibited outdoor activities, and required all activities to cease by 11:00 p.m.

{¶ 4} On December 13, 2017, P.J. Lindy sued the Savages for breach of contract, fraud, negligent misrepresentation, and promissory estoppel. On January 19, 2018, the

2.

Savages answered the complaint and filed a motion for judgment on the pleadings or, alternatively, motion for summary judgment. In their combined motion, the Savages argued that the complaint should be dismissed, with prejudice, because all claims were barred by the parol evidence rule and the statute of frauds.

{¶ 5} The Savages' combined motion depended upon two different "integration" clauses of the real estate purchase contract, contained in paragraphs 10 and 22 of the agreement. Those paragraphs state:

10. **CONDITION OF THE PROPERTY.** * * * There have been no representations, warranties or statements concerning the condition of the property made by Seller, or any real estate broker, agent, or employee upon which Purchaser has relied, other than that which is included in the purchase agreement. * * *

* * *

22. **ACCEPTANCE.** * * * It is understood that this agreement contains all the terms and conditions agreed upon between the parties, and there are no outside conditions, representations, warranties or agreements. * * *

{¶ 6} The Savages claimed that because the contract expressly stated that there had been no "representations * * * concerning the condition of the property" (paragraph 10) and "no outside * * * representations" other than those stated in the written agreement (paragraph 22), the parol evidence rule precluded P.J. Lindy from asserting

3.

any claims, whether in tort or contract, that depended upon any alleged oral representations that were not contained in the written agreement itself.

{¶ 7} The Savages also argued that all of P.J. Lindy's claims were barred by Ohio's statute of frauds, R.C. 1335.05, which precludes the enforcement of any oral agreement for the sale of land. The Savages reasoned that under the statute of frauds, the entire complaint must be dismissed because the parties' written land-sale contract did not contain any representations regarding alcohol use, outdoor activities, or late-night functions.

{¶ 8} In response to the Savages' motion, P.J. Lindy submitted a sworn affidavit from Viviano. In her affidavit, Viviano provided additional detail regarding several misrepresentations and omissions that Garry Savage allegedly made during the due diligence phase of the parties' real estate deal. Viviano stated that she had numerous conversations with Savage, both in person and over the telephone, during which they discussed her intention to use the rental halls for catered banquets. Viviano states that Savage knew of her intended use, but never told her that the property was subject to numerous restrictions that would prevent that intended use. Viviano also claimed that Savage made three specific misrepresentations during the on-site inspection that induced her to purchase the property.

{¶ 9} First, Viviano claims that Savage showed Viviano and her realtor a kegerator that was used to serve beer, and "he said that the kegerator '*was definitively not*

4.

*included with the sale'* but he clearly stated that alcohol was routinely served at functions which took place on the premises." (Emphasis in original.)

{¶ 10} Second, Viviano claimed to have told Savage that she intended to build a pavilion on the property for outdoor events. In response, instead of telling her that outdoor events were prohibited, Savage "commented that he *'thought that would be a good idea.'"* (Emphasis in original.)

{¶ 11} Third, Savage gave her a copy of his standard rental contract and told Viviano that "*'you should use something similar to this as it covers all operating hours, deposits, rental hall use and alcohol use.'"* (Emphasis in original.) Viviano attached Savage's standard rental contract as an exhibit to her affidavit. The Savages' standard rental contract states that "RENTAL HOURS 9:00 AM to 11:59 PM" and provides that "[b]eer kegs <u>MUST</u> be in an <u>approved non-sweat jacket</u>." (Emphasis in original).

{¶ 12} Viviano swore in her affidavit that these misrepresentations and omissions fraudulently induced her to enter the real estate contract. She claims that she did not learn about the conditional use permit—which contains restrictions regarding alcohol use, outdoor activities, and late-night functions—until after closing, at which time she also learned that Savage had previously pursued litigation regarding the alcohol restriction on the property. Savage did not mention the litigation, or the alcohol restriction, at any time before the sale.

{¶ 13} P.J. Lindy relied upon Viviano's affidavit to oppose the Savages' motion. It argued that the parol evidence rule was not applicable because none of Savage's oral

5.

misrepresentations, as alleged by Viviano, contradicted or altered the terms of the written agreement, which does not contain any specific representations regarding alcohol use, outdoor activities, or late-night functions. P.J. Lindy further argued that, under *Galmish v. Cicchini*, 90 Ohio St.3d 22, 36, 734 N.E.2d 782 (2000), a fraudulent-inducement claim "does not lose its force merely because the considered written agreement contains an integration clause." Finally, P.J. Lindy argued that all of its claims were rooted in the written real estate purchase contract, which satisfied the statute of frauds.

{¶ 14} The trial court, upon proper notice to the parties, considered the Savages' motion as a motion for summary judgment under Civ.R. 56. On April 26, 2018, the trial court granted the Savages' summary judgment motion and dismissed the complaint, with prejudice, finding that all of P.J. Lindy's claims were barred by the parol evidence rule. The court found that paragraph 10 of the contract barred the complaint because P.J. Lindy "seeks to use extrinsic/parol evidence of an oral agreement as to the condition of the property, namely that alcohol can be used on the premises," and because P.J. Lindy had agreed to accept the condition of the property "AS IS." The court cited language within paragraph 10 in which it said P.J. Lindy "specifically agreed that there have been no other representations concerning the condition of the property upon which [P.J. Lindy] relied" and "[s]ince the subject [i.e., the "condition of the property"] is included in the Contract, [P.J. Lindy] cannot use extrinsic evidence to contradict it[.]"

{¶ 15} P.J. Lindy appealed the decision, and assigns the following error for our review:

6.

I.  The trial court erred when it dismissed P.J. Lindy & Co., Inc.'s fraudulent inducement claim based upon the parol evidence rule.

## II.  Law and Analysis

{¶ 16} Appellate review of a summary judgment is de novo, *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996), employing the same standard as trial courts.  *Lorain Natl. Bank v. Saratoga Apts.,* 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989).  "[W]e must stand in the shoes of the trial court" and review the same evidence, and apply the same legal standards, as the trial court.  *Roberts v. Republic Storage Sys., Co.*, 5th Dist. Stark No. 2004CA00230, 2005-Ohio-1953, ¶ 20.

{¶ 17} A summary-judgment motion may be granted only when it is demonstrated:

> (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.  *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 67, 375 N.E.2d 46 (1978), Civ.R. 56(C).

{¶ 18} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 526 N.E.2d 798 (1988), syllabus, and identify those portions of the record that demonstrate

7.

the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984). A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist.1999); *Needham v. Provident Bank*, 110 Ohio App.3d 817, 826, 675 N.E.2d 514 (8th Dist.1996), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 201 (1986).

{¶ 19} In their Civ. R. 56(C) motion for summary judgment, the Savages argued that P.J. Lindy's complaint—alleging breach of contract, fraud, negligent misrepresentation, and promissory estoppel—should be dismissed, with prejudice, because all claims depended upon a written contract and were therefore barred by the parol evidence rule or, alternatively, the statute of frauds. The trial court granted the motion, concluding that the parol evidence rule barred P.J. Lindy's claims.[1]

---

[1] The trial court acknowledged that although the Savages also argued that the statute of frauds barred P.J. Lindy's claims for largely the same reason, "the proper analysis is under the Parol Evidence Rule."

8.

## A. The Parol Evidence Rule

{¶ 20} The parol evidence rule provides that "absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements." *Galmish*, 90 Ohio St.3d at 27, 734 N.E.2d 782, quoting 11 Williston on Contracts, Section 33:4, at 569-570 (4th Ed.1999). It is not a rule of evidence or contract interpretation but, rather, it is "a rule of substantive law which, when applicable, defines the limits of a contract." *Id.*, quoting *Charles A. Burton, Inc. v. Durkee*, 158 Ohio St. 313, 109 N.E.2d 265 (1952), paragraph one of the syllabus. The parol evidence rule protects the integrity, predictability, and enforceability of written contracts by prohibiting evidence of any purported agreements that are extrinsic to the contract. *Id.* "Extrinsic evidence is excluded because it cannot serve to prove what the agreement was, this being determined as a matter of law to be the writing itself." *Id.*

"Nevertheless, the parol evidence rule does not prohibit a party from introducing parol or extrinsic evidence for the purpose of proving fraudulent inducement." *Id.* at 28, quoting *Drew v. Christopher Constr. Co., Inc.*, 140 Ohio St. 1, 41 N.E.2d 1018 (1942), paragraph two of the syllabus. Indeed, "it was never intended that the parol evidence rule could be used as a shield to prevent the proof of fraud, or that a person could arrange to have an agreement which was obtained by him through fraud exercised upon the other contracting party reduced to writing and formally executed, and thereby deprive the courts of the power to prevent him from reaping the benefits of his deception or

chicanery." *Id.*, quoting 37 American Jurisprudence 2d, Fraud and Deceit, Section 45, at 621-622 (1968) (footnotes omitted).

{¶ 21} The parol evidence rule, however, "may not be avoided 'by a fraudulent inducement claim which alleges that the inducement to sign the writing was a promise, the terms of which are directly contradicted by the signed writing.'" *Id.* at 29, quoting *Marion Prod. Credit Assn. v. Cochran*, 40 Ohio St.3d 265, 533 N.E.2d 325 (1988), paragraph three of the syllabus. Thus, when a party alleges that it has been fraudulently induced to enter a written contract through the other party's misrepresentations of fact, the relevant question is whether the alleged representations "*directly* contradict" the signed agreement.

{¶ 22} Here, P.J. Lindy's owner, Viviano, alleges that Garry Savage made pre-contractual oral representations that (1) alcohol could be served on the premises, (2) outdoor events were permissible, and (3) late-night events could be held on the property. Contrary to these representations, however, Viviano later learned that the property was subject to a conditional use permit, issued in 1995, that banned alcohol use on the premises, prohibited outdoor activities, and required all activities to cease by 11:00 p.m. In its complaint, P.J. Lindy alleged claims for breach of contract, fraud, negligent misrepresentation, and promissory estoppel. All of these claims relate, in one form or another, to the oral representations that allegedly induced P.J. Lindy to enter the real estate purchase contract with the Savages.

10.

**{¶ 23}** The Savages argued in their summary-judgment motion that the parol evidence rule barred P.J. Lindy's claims because Garry Savage's purported oral misrepresentations regarding the permissibility of alcohol use, outdoor activities, and late-night functions were contradicted by paragraphs 10 and 22 of the written agreement. We will discuss both provisions, starting with paragraph 22.

### 1. Paragraph 22

**{¶ 24}** Paragraph 22 of the written real estate purchase contract provides, in relevant part:

> 22. **ACCEPTANCE.** * * * It is understood that this agreement contains all the terms and conditions agreed upon between the parties, and there are no outside conditions, representations, warranties or agreements. * * *

**{¶ 25}** Paragraph 22 is a "merger clause," also known as an "integration clause." *See* 1 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 33.23 (4th Ed.1999) ("Recitations to the effect that a written contract is integrated, that all conditions, promises, or representations are contained in the writing * * * are commonly known as merger or integration clauses."). The principle of "contract integration"—which is the legal principle from which the parol evidence rule is derived—provides that "a written contract which appears to be complete and unambiguous on its face will be presumed to embody the final and complete expression of the parties' agreement." *Fontbank, Inc. v. CompuServe, Inc.*, 138 Ohio App.3d 801, 808, 742 N.E.2d 674 (10th Dist.2000). In other words, it is a complete "integration" of the parties' agreement. That

presumption is strongest where, as here, the written contract contains an express merger or integration clause. *Id.* But, "[t]he presence of an integration clause makes the final written agreement no more integrated than does the act of embodying the complete terms into the writing." *Galmish* at 28.

{¶ 26} Thus, as the Supreme Court of Ohio recognized in *Galmish,* the presence of a general integration clause "does not vitiate the principle that parol evidence is admissible to prove fraud" because, simply put, "[f]raud cannot be merged." *Id.* Otherwise, the inclusion of a general integration clause into a fully-integrated contract—which, as explained above, is a largely redundant act—would pervert the parol evidence rule into "a shield to prevent proof of fraud." *Id.*

{¶ 27} We therefore hold that a general merger clause, i.e., a clause that merely identifies the contract as a fully-integrated agreement, does not bar the use of parol evidence to prove a fraudulent inducement claim. To prevent a claim of fraudulent inducement, a merger clause—just like any other clause of a written contract— must "directly contradict" the allegedly fraudulent representation at issue. *Id.* at 29.

{¶ 28} Here, paragraph 22 of the real estate purchase contract is a general merger clause. This provision merely identifies the contract as a fully-integrated agreement by stating that it "contains all the terms and conditions agreed upon between the parties, and there are no outside conditions, representations, warranties or agreements." Moreover, the Savages' alleged oral misrepresentations regarding the permissibility of alcohol use,

12.

outdoor activities, and late-night functions are not "directly contradicted" by this general provision. *Id.* at 29.

{¶ 29} Accordingly, paragraph 22 does not bar P.J. Lindy from using parol evidence to prove its fraudulent inducement claim.

## 2. Paragraph 10

{¶ 30} The Savages also rely upon paragraph 10 of the real estate purchase contract, which states, in full:

10. **CONDITION OF THE PROPERTY.** Purchaser agrees to purchase the property, including the land, buildings, improvements, and fixtures in their present physical condition **AS IS,** and has examined the physical condition, value, character, and size of the property and signed this agreement as a result of said examination. There have been no representations, warranties or statements concerning the condition of the property made by Seller, or any real estate broker, agent, or employee upon which Purchaser has relied, other than that which is included in the purchase agreement. Seller states that there are no citations filed by local authorities alleging any zoning or building code violations except (None, if nothing inserted).

**Purchaser DOES** *MV* X **or DOES NOT\_\_\_ want to have an inspection**

13.

*If there is no inspection of property, Purchaser accepts all responsibility*

*for the condition of the property.*

(Emphasis in original).

{¶ 31} In their summary-judgment motion, the Savages argued the second sentence of paragraph 10—which they characterized as another "integration clause"—precludes P.J. Lindy's claims because it expressly provides that there had been no representations concerning "the condition of the property."

{¶ 32} Under *Galmish*, the issue that we must decide is whether the permissibility of certain uses of, or activities on, the property—namely, alcohol use, outdoor events, and late-night functions—is a "condition of the property" under paragraph 10. If it is a "condition of the property," then any representations regarding the permissibility of such uses or activities would be directly contradicted by the second sentence of paragraph 10 and the parol evidence rule would preclude P.J. Lindy's claims.

{¶ 33} The second sentence of paragraph 10, however, "cannot be read in isolation and must be read in context with the other sentences in the paragraph." *In re Application of E. Ohio Gas Co.*, 141 Ohio St.3d 336, 2014-Ohio-3073, 24 N.E.3d 1098, ¶ 26. The first sentence of paragraph 10 states that P.J. Lindy has agreed to purchase the property in its "present *physical* condition **AS IS**." (Italics added.) That same sentence also states that P.J. Lindy has examined "the *physical* condition, value, character, and size of the property" and signed the contract as a result of "said examination." (Emphasis added.) In that context, the word "physical" is a series qualifier that applies equally to "condition,

14.

value, character, and size of the property." *Porto Rico Ry., Light & Power Co. v. Mor*, 253 U.S. 345, 348, 40 S. Ct. 516, 64 L. Ed. 944 (1920). ("When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all."). Finally, the last sentence of paragraph 10 specifies that P.J. Lindy would "accept[] all responsibility for the condition of the property" if P.J. Lindy declined to inspect the property. There are handwritten initials, as well as a typed "x", indicating that P.J. Lindy "DOES" want to inspect the property, and Viviano did, in fact, physically inspect the property on behalf of P.J. Lindy before purchasing the real estate.

{¶ 34} Given this context, we find that the phrase "condition of the property" within the second sentence of paragraph 10—which states that "[t]here have been no representations * * * concerning the condition of the property made by Seller"—clearly and unambiguously refers to *physical* conditions of the property that would be visible upon a physical inspection of the property. Indeed, it would be patently unreasonable for us to conclude that "condition of the property," as used in the second sentence of paragraph 10, means something different than that same phrase when used, repeatedly, in the other sentences of that same paragraph.

{¶ 35} We further find that paragraph 10 does not preclude P.J. Lindy's claims under the parol evidence rule because the permissibility of alcohol use, outdoor events, and late-night functions are not "condition[s] of the property" as that phrase is used in paragraph 10. P.J. Lindy has alleged that Savage made oral misrepresentations regarding

15.

legally-permissible *uses* of the property, not physical aspects of the property that would have been visible upon inspection and therefore accepted by P.J. Lindy "AS IS" after such inspection. Accordingly, given that paragraph 10 of the real estate purchase contract does not "directly contradict" the Savages' alleged oral misrepresentations regarding alcohol use, outdoor events, and late-night functions, paragraph 10 does not preclude P.J. Lindy's claims under the parol evidence rule. *Galmish*, 90 Ohio St.3d at 29, 734 N.E.2d 782.

{¶ 36} We therefore reject the Savages' argument that the "integration clauses" of paragraphs 10 and 22 preclude P.J. Lindy's claims under the parol evidence rule because neither paragraph directly contradicts the allegedly fraudulent misrepresentations at issue.

### B. The Statute of Frauds

{¶ 37} Finally, we briefly address the Savages' alternative argument that P.J. Lindy's complaint is barred by the statute of frauds.

{¶ 38} Ohio's statute of frauds, R.C. 1335.05, precludes the enforcement of any oral agreement for the sale of land. The Savages argued that P.J. Lindy's complaint is precluded by the statute of frauds because it depends upon alleged oral representations that are not contained in the parties' written real estate contract.

{¶ 39} In *Marion Prod. Credit Assn. v. Cochran*, 40 Ohio St.3d 265, 533 N.E.2d 325 (1988), at paragraph three of the syllabus, the Supreme Court of Ohio held that "[t]he Statute of Frauds may not be overcome by a fraudulent inducement claim which alleges that the inducement to sign the writing was a promise, the terms of which are directly

16.

contradicted by the signed writing." The Supreme Court of Ohio later recognized, however, that its reference to the statute of frauds was a "mistake" because "the Statute of Frauds was not a serious issue [in *Cochran*], since all agreed that the party to be charged had signed the writing containing the terms of the suretyship and mortgage agreement." *Galmish* at 29, fn. 2, quoting Shanker, *Judicial Misuses of the Word Fraud to Defeat the Parol Evidence Rule and the Statute of Frauds (With Some Cheers and Jeers for the Ohio Supreme Court)*, 23 Akron L.Rev. 1, 28 (1989). The court further recognized that because the question presented in *Cochran* was "whether that written agreement could be contradicted under the plaintiff's theory of fraudulent inducement," that was a "question to be determined by the Parol Evidence Rule." *Id.; see also Rice v. Rice*, 7th Dist. Columbiana No. 2001-CO-28, 2002-Ohio-3459, ¶ 30 ("The Ohio Supreme Court itself mistakenly referred to the Statute of Frauds in *Cochran,* supra, when it was actually analyzing the parol evidence rule.").

{¶ 40} Similarly here, we find that P.J. Lindy's claims do not violate the statute of frauds because the parties signed a written contract for the sale of land, and the proper analysis is under the parol evidence rule—not the statute of frauds.

### III. Conclusion

{¶ 41} We find that P.J. Lindy's claims are not barred by the parol evidence rule because the allegedly fraudulent misrepresentations are not directly contradicted by the written real estate purchase contract.

17.

**{¶ 42}** P.J. Lindy's sole assignment of error is well-taken.  The trial court's judgment granting the Savages' motion for summary judgment and dismissing the complaint, with prejudice, is reversed and this case is remanded to the trial court for further proceedings.

**{¶ 43}** The Savages are ordered to pay the costs of this appeal under App.R. 24.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J. _____

_____
JUDGE

Thomas J. Osowik, J. _____

_____

Christine E. Mayle, P.J. _____      JUDGE
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.