[Cite as *Grange Ins. Co. v. Swearengen*, 2021-Ohio-3596.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

GRANGE INSURANCE COMPANY,

Plaintiff-Intervenor-Appellant,

v.

JAMES C. SWEARENGEN, JR., et al., INDIVIDUALLY AND AS ADMINISTRATOR FOR THE ESTATE OF JAMES SWEARENGEN, AND CAROLYN SWEARENGEN, DECEASED,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 21 JE 0005**

---

Civil Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 18-CV-490

**BEFORE:**
Cheryl L. Waite, Gene Donofrio, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed in part. Reversed in part.
Remanded in part.

---

*Atty. James R. Gallagher*, Gallagher, Gams, Tallan, Barnes & Littrell, LLP, 471 East Broad Street 19th Floor, Columbus Ohio 43215-3872, for Intervening Plaintiff-Appellant Grange Insurance Company

*Atty. Lee E. Plakas*, *Atty. Megan J. Frantz Oldham*, *Atty. Maria C. Klutinoty Edwards*, and *Atty. Brandon W. McHugh*, Plakas Mannos, 220 Market Avenue North, Suite 300, Canton Ohio 44702, for Defendants-Appellees James C. Swearengen, Jr., Individually and as Administrator for the Estates of James Swearengen and Carolyn Swearengen, Deceased.

Dated: September 30, 2021

_____

**WAITE, J.**

{¶1} Appellant Grange Insurance Company appeals a February 2, 2021 Jefferson County Court of Common Pleas judgment entry which granted summary judgment in favor of Appellee, James C. Swearengen, Jr., Individually and as Administrator for the Estate of James Swearengen, Deceased, et al. In this action, brought to determine the policy limits of a commercial insurance policy, Appellant argues that the trial court erroneously applied the aggregate policy limit to a single occurrence instead of the applicable per occurrence limit. Appellant also argues that the court erroneously required immediate payment before an appeal could be filed and imposed post-judgment interest in violation of the parties' settlement agreement. For the reasons provided, Appellant's argument regarding post-judgment interest has merit. However, Appellant's remaining arguments are without merit. Accordingly, the matter is remanded for purposes of entering a *nunc pro tunc* entry to strike post-judgment interest from the damage award. The judgment of the trial court is affirmed in all other respects.

Factual and Procedural History

{¶2} On November 11, 2016, James and Carolyn Swearengen called Mutton's Heating and Cooling ("Mutton's") and requested service on their heating system. Mutton's

Case No. 21 JE 0005

arrived at the Swearengen residence and completed repairs on the boiler. On February 5, 2017, approximately three months later, the Swearengens were found deceased in their home. The cause of death was determined to be carbon monoxide poisoning.

**{¶3}** On November 9, 2018, Appellee filed a complaint against Mutton's, alleging negligence in failing to inform the Swearengens of the dangerous condition of their boiler which was described as "ancient." At the time of the incident, Appellant insured Mutton's under a "Contractor and Tradesman Commercial General Liability" policy.

**{¶4}** On February 6, 2020, the parties reached a settlement agreement. Appellant agreed to pay Appellee $1,000,000 at the time the probate court approved the agreement. When the court approved the agreement, Mutton's would be released from all claims. However, the parties disagreed about the policy limits, so it was agreed that Appellant would be allowed to intervene and assert a declaratory judgment action against Appellee. If the trial court determined that the policy limit was $1,000,000, the parties agreed that no further payment would be due. However, if the court found the policy limit was $2,000,000, Appellant was to pay Appellee an additional $800,000 after final judgment.

**{¶5}** On June 5, 2020, the probate court approved the agreement. On August 20, 2020, Appellant filed a third-party declaratory judgment action against Appellee. On November 25, 2020, the parties filed competing motions for summary judgment. On January 29, 2021, the trial court held a hearing and on February 2, 2021, the court granted summary judgment in favor of Appellee, finding that the policy provided a $2,000,000 limit. It is from this entry that Appellant timely appeals.

<u>Summary Judgment</u>

**{¶6}** An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). Whether a fact is "material" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995).

**{¶7}** "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293, 662 N.E.2d 264. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 386, 701 N.E.2d 1023 (8th Dist.1997).

**{¶8}** The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327, 364 N.E.2d 267.

## ASSIGNMENT OF ERROR NO. 1

The Trial Court erred in ruling that the $2 million "aggregate" limit of liability coverage applied to the single "occurrence" giving rise to this litigation. The policy provides that the $1 million "occurrence" limit is the maximum amount payable for any single occurrence covered by the Liability coverage portion of the policy.

**{¶9}** The primary issue, here, requires this Court to determine the policy limits of an insurance policy. To obtain a better understanding of the parties' arguments, a relevant term used throughout the judgment entry and parties' briefs will be briefly addressed. The service Mutton's provided to the Swearengens falls within a certain type of risk included within the liability coverage called "Products Completed Operations Hazard" ("PCOH"). Interpretation of this term and its effect on the policy limit is directly at issue here. The parties agree that the policy does not provide separate stand-alone coverage for PCOH claims. However, they disagree as to whether a PCOH claim has its own separate liability limits. Thus, the narrow issue before us is whether a PCOH claim

falls within the policy's general liability per occurrence limits or in a separate PCOH claim limit.

**{¶10}** Appellant explains that Ohio law requires a trial court to examine an insurance policy as a whole and to give effect to all relevant provisions. Appellant contends that contrary to this requirement, the trial court expressly refused to look beyond the declaration page in interpreting the policy limits. Appellant explains that the declarations page directs the reader to "refer to SECTION II, D. Liability and Medical Expenses Limits of Insurance" to determine the policy limits. Section II, D. provides that Appellant will "pay for 'Bodily Injury' and 'Medical Expenses' found in the "Liability and Medical Expenses limit shown in the Declarations." (Appellant's Brf., p. 2.) Appellant argues that the "Bodily Injury and Medical Expense" section of the policy provides a "per occurrence" limit of $1,000,000 and is the default limit for any single occurrence covered by the policy, including PCOH claims. Because the claim at issue involved one, single occurrence, Appellant argues that the applicable policy limit is $1,000,000.

**{¶11}** Appellee responds that the declaration page specifically includes a line describing the liability limits for PCOH claims. This language provides an aggregate limit of $2,000,000. However, unlike the policy language entitled "Liability Limit," the PCOH language does not refer to any per occurrence limit, and contains only an aggregate limit. Because the PCOH language does not provide an occurrence limit, Appellee argues that those claims are subject only to a $2,000,000 aggregate limit and that they have no per occurrence limit.

**{¶12}** The Ohio Supreme Court has described the analysis a reviewing court conducts in a matter involving the interpretation of an insurance policy:

When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.* (1999), 86 Ohio St.3d 270, 273, 714 N.E.2d 898, citing *Employers' Liab. Assur. Corp. v. Roehm* (1919), 99 Ohio St. 343, 124 N.E. 223, syllabus. See, also, Section 28, Article II, Ohio Constitution. We examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. *Id.* As a matter of law, a contract is unambiguous if it can be given a definite legal meaning. *Gulf Ins. Co. v. Burns Motors, Inc.* (Tex.2000), 22 S.W.3d 417, 423.

*Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11.

{¶13} For ease of understanding, the relevant section of the declaration page reads as follows:

| Coverages | Limits of Insurance |
| --- | --- |
| Liability Limit | $1,000,000 each occurrence |

|  | $2,000,000 aggregate |
| Products/Completed Operations (PCOH) | $2,000,000 aggregate |
| Personal & Advertising Injury | Included in Policy |
| Medical Expenses | $5,000 per person |
| Damage To Premises Rented to You | $100,000 |
|  | Any one fire or explosion |

(12/15/20 Notice of Filing Insurance Policy, p. 6.)

**{¶14}** Despite Appellant's arguments, Appellee does not argue that the policy provides PCOH claims with stand-alone coverage. Instead, Appellee argues that the policy provides separate liability limits for PCOH claims based on the above cited language of the Declaration page. Appellee also does not argue that the incident at issue involves more than a single occurrence. Appellee's contention is that the policy provides no per occurrence limit for PCOH liability. Instead, it is subject only to the aggregate limit.

**{¶15}** In a detailed judgment entry, the trial court agreed with Appellee and determined that, unlike the "Liability Limit," PCOH claims are subject to only an aggregate limit. The court acknowledged that Section II D states that: "[t]he most we will pay for the sum of all damages because of all: a. Bodily injury', 'property damage' and medical expenses arising out of any one 'occurrence'…" (2/2/21 J.E.) However, the court explained that this would only have been relevant if the PCOH line included a "per occurrence" limit, which it does not. The court further explained that the absence of any per occurrence limit is glaring, as the general liability limit expressly contains a per

Case No. 21 JE 0005

occurrence limit. In other words, if the parties intended the policy to include a per occurrence limit for a PCOH claim, they would have expressly done so and have worded the liability limitations identically with the general liability limit line. The court noted that the "medical" limit also did not include a per occurrence limit. Contrary to Appellant's contentions, then, it is readily apparent the trial court in the instant matter did not limit its analysis solely to the declarations page. The court clearly considered the declarations alongside Section D, as expressly explained in the court's judgment entry.

{¶16} We must also begin our analysis with the declarations page. Appellant, as drafter of the policy, chose not to treat all claims under the policy the same. Instead, Appellant created two groups: general liability claims and PCOH claims. This is clear from the subsections shown on the declarations page which are titled "Liability Limit" and "Products/Completed Operations (PCOH)." The "Liability Limit" established two types of policy limits: per occurrence and in the aggregate. At first blush, it appears that every type of liability covered under the policy should be subject to these limits. However, these limits are further explained by the next lines of the declaration, which set other, separate limits for certain other types of liability. Instead of leaving PCOH claims contained within these general liability limits, PCOH claims are "carved out" of the other types of liability and given their own separate line on the declarations, with their own separate limits of liability: "$2,000,000 aggregate." Based on this section, alone, it appears that Appellant chose to exclude a per occurrence limit for PCOH claims and instead, provide only an aggregate liability limit.

{¶17} Appellant could easily have added a per occurrence limit to the declaration language regarding PCOH claims but did not. Appellant could have chosen not to

separately address PCOH claims, thus including these claims within the general limits of liability. Appellant argues that the default for all per occurrence claims is the general liability limit of $1,000,000. However, if this were true, there would have been no need to create a PCOH category on the declarations page. In order to determine whether there is any validity to Appellant's additional argument or whether the declaration language is merely an oversight, however, we must now turn to the policy as a whole where there may be other provisions interpreting the omission of the per occurrence language in support of Appellant's contentions.

{¶18} The parties direct us to Section D, which is titled: "Liability And Medical Expenses Limits of Insurance." Appellant focuses its argument on Section D, 2 which addresses per occurrence limits:

D. Liability and Medical Expenses Limits of Insurance

1. The Limits of Insurance of Section II – Liability shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Clams made or "suits" brought, or

c. Persons or organizations making claims or bringing "suits".

2. The most we will pay for the sum of all damages because of all damages because of all:

(a) "Bodily injury", "property damage" and medical expenses arising out of any one occurrence", and

(b) "Personal and advertising injury" sustained by any one person or organization;

is the Liability and Medical Expenses Limit shown in the Declarations. But the most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses Limit shown in the Declarations.

(12/15/20 Notice of Filing Insurance Policy, p. 41.)

{¶19} Appellant argues that this section, which describes the "per occurrence limits," provides that all single occurrences fall within the general liability limits regardless of the type of claim. However, Appellant ignores Section D, 4 which also must be read in conjunction with Section D, 2. Section D, 4 describes the aggregate limits.

{¶20} While neither party addressed Section D, 4 in their briefs, both addressed the subsection at oral argument.

4. Aggregate Limits.

The most we will pay for:

a. All "bodily injury" and "property damage" that is included in the "products-completed operations hazard" is twice the Liability and Medical Expenses limit.

b. All:

(1) "Bodily injury" and "property damage" except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

(2) Plus medical expenses;

(3) Plus all "personal and advertising injury" caused by the offenses committed;

is twice the Liability and Medical Expenses limit.

(12/15/20 Notice of Filing Insurance Policy, p. 42.)

**{¶21}** The policy, drafted by Appellant, provides in general terms for "per occurrence" limits of liability. This section does not specifically address PCOH claims. Within Section D, 4, however, general liability and PCOH claims are discussed separately as they are addressed on the declarations page. This section provides "twice the Liability and Medical Expenses limit" for "bodily injury" and "property damage" arising out of PCOH claims. This section then discusses the same categories of liability discussed in D, 2's "per occurrence" language and provides a $2,000,000 aggregate limit for claims arising out of "bodily injury," "property damage," medical expenses, and "personal and advertising injury" expenses. Thus, the policy treats general liability claims and PCOH claims separately in regard to liability limits in both the declarations and within Section D. Failure to mention PCOH claims in D, 2, the section directly addressing per occurrence limitations, appears to buttress Appellee's argument that the parties intended these

claims were subject only to one, aggregate limit. There is absolutely no language in this contract specifically limiting PCOH claims with any "per occurrence" limits.

{¶22} Both parties cite to *D.I.C.E., Inc. v. State Farm Ins. Co.*, 6th Dist. Lucas No. L-11-1006, 2012-Ohio-1563. In *D.I.C.E.*, the use of a hydraulic lift caused significant injury to a person and gave rise to a PCOH claim. The issue was whether a PCOH claim gave rise to a stand-alone claim. The *D.I.C.E.* court held that the policy did not include an independent provision defining and providing coverage of PCOH claims. The *D.I.C.E.* court did not address liability limits, and does not provide guidance, here.

{¶23} Both parties also cite to *Burdette v. Bell,* 2019-Ohio-5035, 137 N.E.3d 1236 (12th Dist.). In *Bell,* an employee of a restaurant struck and injured a pedestrian while delivering a pizza. One issue turned on whether the policy provided stand-alone coverage for a PCOH claim or merely established separate liability limits. The policy language is similar to the one at issue, here, and is provided below.

> The term PCOH is discussed in three places in the policy, the declarations page, the limits of insurance provision in Section II, and the definitions provision in Section II. The declarations page states that under Section II – LIABILITY, two separate categories of Limit of Insurance are provided, one for COVERAGE, consisting of Coverage L, Coverage M, and Damages to Premises Rented To You, and one for AGGREGATE LIMITS, consisting of "Products/Completed Operations Aggregate" and "General Aggregate."
>
> The limits of insurance provision of Section II provides in relevant part that

(1) The Limits of Insurance of SECTION II – LIABILITY shown in the Declarations and the rules below fix the most we will pay * * * .

(2) The most we will pay for * * * "bodily injury," "property damage" and medical expenses arising out of any one "occurrence" * * * is the Coverage L – Business Liability shown in the Declarations[.]

(3) * * *

(4) Aggregate Limits

The most we will pay for:

(a) All "bodily injury" and "property damage" that is included in the [PCOH] is the Products and Completed Operations Aggregate limit shown in the Declarations.

(b) All:

(1) "Bodily injury" and "property damage" except damages because of "bodily injury" or "property damage" included in the [PCOH];

(2) * * *

(3) * * *

is the General Aggregate limit shown in the Declarations.

*Id.* at ¶ 22-23.

**{¶24}** Based on this language, the *Bell* court found that the policy created separate liability limits for PCOH claims, not stand-alone coverage. *Id.* at ¶ 29. We note that the policy, as quoted by the court, included only an aggregate limit for PCOH claims. While the *Bell* court resolved a different issue than the one before us, the court appears to have interpreted a declarations page with the same general liability and PCOH limits and determined that PCOH claims gave rise to separate liability limits. Specifically, the court held: "the fact that the declarations page and the limits of insurance provision both designate a separate limit of liability for PCOH does not lead to the conclusion that PCOH provides a separate coverage. A different limit of liability for PCOH is just that, a different applicable limit, not a separate form of coverage." *Id.* at ¶ 28. The *Bell* policy language cited above almost mirrors the language in the instant case.

**{¶25}** Appellant's policy language clearly treats general liability claims and PCOH claims differently for purposes of liability limits. If Appellant's argument were accepted, the inclusion of a separate line for PCOH aggregate limits on the declarations page was unnecessary. Appellant has provided no explanation as to why this section did not include language anywhere addressing a per occurrence limit for PCOH claims if that was the intent of the policy. This is underscored in Section D, which also treats general liability and PCOH claims differently for purposes of liability limits. In reading the contract as a whole, while PCOH claims do not have separate stand-alone coverage, these claims are subject to separate liability limits similar to those in *Bell.*

**{¶26}** While Appellant now argues that the contract language intended a different result, Appellant drafted the policy at issue. Based on the clear, unambiguous language found within the policy, PCOH claims are subject to only an aggregate limit of $2,000,000.

Because we find the language regarding policy limits to be unambiguous, we need not look further. Accordingly, Appellant's first assignment of error is without merit and is overruled.

ASSIGNMENT OF ERROR NO. 2

The Trial Court erred in issuing a judgment against grange [sic] for $800,000 and for ordering post judgment interest to be paid by grange [sic].

**{¶27}** Appellant argues that the trial court erroneously awarded Appellee monetary damages where the complaint did not request such damages. Appellant also argues that the court erroneously required immediate payments, because the settlement agreement contained a condition precedent allowing the parties an opportunity to exhaust the appellate process before an obligation to pay the additional $800,000 arose. Additionally, Appellant contends that the court erroneously imposed post-judgment interest, as the parties specifically removed post-judgment interest from the settlement agreement during negotiations.

**{¶28}** Appellee replies that the complaint sought a remedy, to include court costs and all relief deemed just and equitable. Appellee argues that monetary damages fall within the latter category. As to post-judgment interest, Appellee correctly explains that the parties' negotiations are not part of the appellate record. Even so, the settlement agreement included a merger clause providing that all negotiations were superseded by the settlement agreement itself, and that agreement does not address post-judgment interest. As to the condition precedent, Appellee notes that the $800,000 at issue was required to be paid after final judgment was entered. As the trial court's judgment was

final, payment became due. Appellee explains that the settlement agreement relieved Appellant only of the requirement to post a supersedeas bond.

**{¶29}** In its judgment entry, the trial court granted the following relief: "[f]or all of the reasons set forth above the Court finds that the Mutton policy had a single aggregate limit of $2,000,000 for [PCOH claims] and that pursuant to the Swearengen-Mutton-Grange settlement, Grange owes Swearengen an additional $800,000 for which judgment is granted, plus costs of this action and post-judgment interest." (J.E.)

**{¶30}** Contrary to Appellant's argument, the $800,000 awarded by the trial court does not represent an additional monetary damage. This amount is the remaining money due under the settlement agreement. The agreement provided for an immediate payment of $1,000,000 at the time the probate court accepted the agreement. The remaining $800,000 was not due until and unless the court determined that the policy limit was $2,000,000. In other words, the additional $800,000 was due only if the policy limits exceeded the original $1,000,000 payment. Once the trial court determined that the policy limit was $2,000,000, this triggered the additional $800,000 payment as per the settlement agreement. Had the trial court found the opposite, no additional money was owed.

**{¶31}** Appellant contends the court erroneously required immediate payment of the $800,000 before an appeal could be taken. The payment due dates are addressed in the settlement agreement. The relevant clause states:

> In the event there is a final judgment that Two Million Dollars ($2,000,000.00) of coverage is available, within fourteen (14) days of Probate Court approval, if further Probate court approval is required, or

within thirty-five days of the entry of final judgment, **including final judgment after any appeals**, if Probate court approval is not required, [Appellant] will pay an additional Eight Hundred Thousand Dollars ($800,000) to Swearengen * * * (Emphasis added.)

(8/20/20 Intervening Complaint, Exh. A.)

{¶32}  It is unclear whether Appellant has paid the additional $800,000 or whether payment is being withheld until the completion of the appellate process.  The record contains no evidence of completed payment.  Contrary to Appellant's assertion, it does not appear from the court's judgment entry that payment was immediately due before an appeal could be taken.  To the extent that Appellant paid the $800,000 before appealing under an erroneous belief that the court required immediate payment, the settlement agreement expressly provides that it was not due until thirty-five days after final judgment "including final judgment **after any appeals**."  (Emphasis added.)  (8/20/20 Intervening Complaint, Exh. A.)  Thus, Appellant is not required to pay the $800,000 until after the appeals process is exhausted.  Again, we must note that the trial court did not order immediate payment.

{¶33}  Regarding post-judgment interest, the parties have competing views on whether this was addressed in the settlement agreement.  Appellant argues that the settlement agreement initially provided for post-judgment interest, however, that was removed during the parties' negotiations.  Appellee responds by arguing that the parties' negotiations are not within the appellate record and are preempted by a merger clause.

{¶34}  A merger clause provides that "a written contract which appears to be complete and unambiguous on its face will be presumed to embody the final and complete

expression of the parties' agreement." *P.J. Lindy & Co. v. Savage*, 6th Dist. Erie No. E-18-028, 2019-Ohio-736, ¶ 25, appeal not allowed, 156 Ohio St.3d 1445, 2019-Ohio-2498, 125 N.E.3d 928, citing *Fontbank, Inc. v. CompuServe, Inc.*, 138 Ohio App.3d 801, 808, 742 N.E.2d 674 (10th Dist.2000).

**{¶35}** The merger clause in the instant settlement agreement provided:

This Agreement constitutes the entire agreement and supersedes any and all other understandings and agreements between the Parties with respect to the settlement of the Litigation and no representation, statement or promise not contained herein shall be binding on either party. This Agreement may be modified only by a written amendment duly signed by each Party.

(8/20/20 Intervening Complaint, Exh. A., Paragraph 15.)

**{¶36}** Thus, to the extent Appellant attempts to introduce extrinsic evidence from the parties' negotiations, the merger clause prohibits such evidence. However, another clause in the agreement is relevant. Paragraph eight of the settlement agreement provides:

With the exception of the agreement to pay the amount of One Million Dollars ($1,000,000) referenced in Paragraph 3 of this Agreement and, if Swearengen prevails in the Declaratory Judgment Action, the additional Eight Hundred Thousand Dollars ($800,000) referenced in Paragraph 7 of this Agreement, **Swearengen will not seek to recover any additional damages** for the claims asserted, or which could have been asserted, in

Case No. 21 JE 0005

the Litigation from Mutton, [Appellant], or any other person, firm, or entity. (Emphasis added.)

(Complaint, Exh. A.)

**{¶37}** R.C. 1343.03(A) provides that:

In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract.

**{¶38}** "Under the statute, absent an agreement to the contrary, postjudgment interest is payable to appellee as a matter of law." *Licking Hts. Local School Dist. Bd. of Edn. v. Reynoldsburg City School Dist. Bd. of Edn.*, 2013-Ohio-3211, 996 N.E.2d 1025, ¶ 30 (10th Dist.). While the parties claim that any reference to post-judgment interest was removed from the agreement, the parties clearly agreed that Appellee would not seek additional damages beyond the $1,800,000 in the settlement agreement. The question becomes whether post-judgment interest is a form of damages.

Case No. 21 JE 0005

**{¶39}** Research does not reveal any law, either statutory or caselaw, that addresses this issue. However, the Ohio Supreme Court has provided some general guidance in *Parker v. I&F Insulation Co.*, 89 Ohio St.3d 261, 730 N.E.2d 972, 978 (2000). In *Parker,* the court reviewed whether a party entitled to attorney fees could receive post-judgment interest on that award in addition to the damage award. While this issue is readily distinguishable from the instant matter, the *Parker* Court's rationale provides some guidance. The Court limited its holding to attorney fees in CSPA cases, but the court cited to caselaw stating that "post-judgment interest is 'a form of compensating for the period that the [prevailing party] remains 'less than whole.' '" *Id.* at 367, citing *Isaacson Structural Steel Co. v. Armco Steel Corp.* (Alaska 1982), 640 P.2d 812, 818. Applying that principal, because post-judgment interest is a way of making the injured party "whole," it appears to be part and parcel with a damage award.

**{¶40}** Regardless, it is readily apparent that the parties' intended to limit the award to the $1,800,000 settlement agreement, alone. This can be inferred from the parties' use of language to prohibit "**any** additional damages" for claims asserted or "which could have been asserted." (Emphasis added.) (Complaint, Exh. A.) Further, as we have earlier discussed, payment of the additional $800,000 was not due until exhaustion of the appellate process. Hence, there appears to be no award on which the trial court could grant interest.

**{¶41}** Accordingly, Appellant's second assignment of error has merit in part. The trial court erred in awarding post-judgment interest in this matter.

## Conclusion

{¶42} Appellant argues that the insurance policy in effect at the time of the incident had a policy limit of $1,000,000 for a single occurrence no matter on what basis a claim is made. Appellant contends that the trial court erred in relying on language pertaining to an aggregate limit when it determined that the applicable policy limit was $2,000,000. Appellant also argues that the trial court erroneously required immediate payment before an appeal could be filed and imposed post-judgment interest in violation of the parties' settlement agreement. For the reasons provided, Appellant's argument regarding post-judgment interest has merit. However, Appellant's remaining arguments are without merit. Accordingly, the matter is remanded for purposes of entering a *nunc pro tunc* entry to strike post-judgment interest from the damage award. The judgment of the trial court is affirmed as to all other respects.

Donofrio, P.J., concurs.

D'Apolito, J., concurs.

For the reasons stated in the Opinion rendered herein, Appellant's first assignment of error is overruled and its second assignment is sustained in part. It is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is affirmed in part and reversed in part. We hereby remand this matter to the trial court for further proceedings according to law and consistent with this Court's Opinion. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

**NOTICE TO COUNSEL**

**This document constitutes a final judgment entry.**